COURT
OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
NO. 2-02-200-CV
 
KELLY RENEE DAWSON                                                                                
APPELLANT
V.
CARLA K. BRIGGS                                                                                        
APPELLEE
------------
FROM THE 96TH DISTRICT COURT OF TARRANT COUNTY
------------
OPINION
------------
I. Introduction
Kelly Renee Dawson appeals a $233,515.62 default judgment entered
against her. In two issues, she claims that the trial court lacked jurisdiction
to enter a postjudgment order granting an amendment to the return of citation
and that the evidence offered at the default hearing was legally and factually
insufficient to support the damage award. We will affirm in part and reverse and
remand in part.
II. Factual and Procedural Background
Dawson and Appellee Carla Briggs were involved in a car accident.
Dawson's car ran into the back of Briggs's car. Dawson's insurance carrier paid
only for Briggs's property damage. Briggs sued Dawson, seeking to also recover
personal injury damages she suffered as a result of the accident.
A private process server delivered a citation and Briggs's lawsuit to
Dawson on April 4, 2001. The return of citation indicates that the citation and
Briggs's original petition were personally served on Dawson at 4:40 p.m. at the
Falls Apartments, 9001 South Normandale Street in Fort Worth, Tarrant County,
Texas, at her apartment, apartment 2056. The private process server signed the
return of citation, but his signature was not verified. Dawson did not file an
answer to Briggs's suit.
On March 15, 2002, the trial court conducted a default judgment
prove-up hearing. On the same day, following the hearing, the trial court signed
a judgment for Briggs in the amount of $233,515.62 plus prejudgment interest. 
Dawson timely filed a motion for new trial, pointing out that the
private process server's signature on the return of citation was not verified.
Dawson claimed that, because of this procedural defect, the trial court lacked
personal jurisdiction over Dawson and argued that the default judgment should be
set aside. Dawson did not deny that she was served as reflected in the return.
After Dawson filed her motion for new trial, Briggs filed a motion to
amend the return of citation. Briggs requested that the trial court enter an
order allowing the amendment of the return by adding the verification of the
process server's signature. The trial court conducted a hearing, and at the
conclusion of the hearing, verbally denied Dawson's motion for new trial and
verbally granted Briggs's motion to amend the return of citation. On June 7,
2002, Dawson filed a notice of appeal. On June 17, 2002, the trial court signed
a written order granting Briggs's motion to amend the return. The trial court
never signed a written order denying Dawson's motion for new trial.
III. Trial Court's Jurisdiction
In her first issue, Dawson claims that the trial court lacked
jurisdiction to order the return of citation amended. Specifically, Dawson
raises the following issue:
Issue Number One

 
 There are no presumptions of valid service in a default
 judgment case. The private process server's return of citation was not
 verified. The trial court's order allowing amendment of the defective
 citation was not signed until after the court of appeals acquired exclusive
 jurisdiction over the case.  Was the trial court's late order void so
 that the unverified return mandates reversal of the default judgment?
 

The standard of review paragraph in Dawson's brief under this issue
states, "The issue of whether the trial court had jurisdiction to amend the
return of citation at the time the trial court signed the order purporting to do
so is a question of law, subject to de novo review." The headings in
Dawson's brief under issue one are: 1. The Standard of Review is De Novo; 2.
There Are No Presumptions of Valid Service in a Default Judgment Case; 3. The
Private Process Server's Return Had to Be Verified; 4. The Trial Court Lost
Jurisdiction to Allow Amendment of the Return Once Dawson Perfected This Appeal;
5. Rule 329b Plenary Power Does Not Make the Trial Court's Late Order Valid; and
6. Rule 118 Will Not Rescue the Trial Court's Late Order. All of this is to
explain that, giving Dawson's first issue a liberal construction, as we must, we
perceive the sole issue presented to us by Dawson's first issue to be whether
the trial court possessed jurisdiction to order the return of citation amended. See
Tex. R. App. P. 38.1(e), 38.9 (requiring a liberal construction of issues).
The issue of whether the trial court erred by initially granting a
default judgment on an unverified private process server's return of service is
not before us. The issue of whether the trial court erred by denying Dawson's
motion for new trial raising the issue of the unverified private process
server's return of service is not before us. The issue of whether the trial
court abused its discretion by granting Briggs's motion to amend the return of
citation is not before us. We will not address unassigned error. See,
e.g., Am. Gen. Fire and Cas. Co. v. Weinberg, 639 S.W.2d 688, 689 (Tex.
1982) (holding that the court of appeals erred by reversing the trial court's
judgment on unassigned error); Cox v. Johnson,
638 S.W.2d 867, 868 (Tex. 1982) (same).
The issue before us is simply whether the trial court possessed
jurisdiction to enter an order granting Briggs's motion to amend the return of
citation. Dawson contends that we review this issue as a question of law under a
de novo standard of review. We agree. See Mayhew
v. Town of Sunnyvale, 964 S.W.2d 922, 928 (Tex. 1998), cert.
denied, 526 U.S. 1144 (1999) (applying de novo standard to question of
subject-matter jurisdiction); Michel v. Rocket
Eng'g Corp., 45 S.W.3d 658, 667 (Tex. App.--Fort
Worth 2001, no pet.) (holding that "[w]e review all questions
of law de novo"). We now turn to that issue.
Rule 118 of the Texas Rules of Civil Procedure provides:

         At any
 time in its discretion and upon such notice and on such terms as it deems
 just, the court may allow any process or proof of service
 thereof to be amended, unless it clearly appears that material prejudice
 would result to the substantial rights of the party against whom the process
 issued.

Tex. R. Civ. P. 118 (emphasis added). The default judgment was entered
on March 15, 2002. Dawson timely filed a motion for new trial on April 12, 2002.
Because the trial court never signed a written order denying Dawson's motion for
new trial, it was overruled by operation of law on May 29, 2002, the
seventy-fifth day following the March 15, 2002 default judgment. See
Tex. R. Civ. P. 329b(c). Thus, the trial court possessed plenary power over this
case through June 28, 2002, the one-hundred-fifth day following the March 15,
2002 default judgment. See Tex. R. Civ. P. 329b(e); Philbrook
v. Berry, 683 S.W.2d 378, 379 (Tex. 1985) (recognizing that a timely filed
motion for new trial may extend the trial court's plenary power through the
one-hundred- fifth day following a final judgment). The trial court therefore
possessed plenary power over the March 15, 2002 default judgment when it signed
the June 17, 2002 order granting Briggs's motion to amend the return of
citation.
Dawson concedes that the order granting Briggs's motion for amendment
of the return of citation was signed during the trial court's period of plenary
power. Nonetheless, Dawson contends that the trial court lacked jurisdiction to
enter its June 17, 2002 order (a) because she filed a notice of appeal on June
7, 2002, vesting exclusive jurisdiction in this court and (b) because the trial
court's plenary power is limited to the powers listed in rule 329b of the rules
of procedure and those powers do not include the power to amend a return of
citation. Briggs responds to Dawson's position by pointing out that the trial
court verbally granted her motion to amend the citation on May 28, 2002, ten
days before Dawson filed her notice of appeal. Briggs argues that the trial
court clearly possessed jurisdiction to enter an order during its plenary power
formalizing a ruling it made prior to Dawson's filing of her notice of appeal.
Briggs also contends that once the trial court allowed amendment of the
citation, the amendment related back to the date the original return was filed
with the court so that the verified return is deemed to have been on file for
nearly a year before the entry of the default judgment against Dawson.
We will first address the issue of whether Dawson's notice of appeal,
invoking the jurisdiction of this court, deprived the trial court of
jurisdiction to sign its June 17, 2002 order granting Briggs's motion to amend
the return of citation. Dawson cites three cases: Ammex
Warehouse Co. v. Archer, 381 S.W.2d 478, 482 (Tex. 1964); Bridas
Corp. v. Unocal Corp., 16 S.W.3d 887, 889 (Tex. App.--Houston [14th
Dist.] 2000, pet. dism'd w.o.j.); and Atkins v. Snyder,
597 S.W.2d 779, 782 (Tex. Civ. App.--Fort Worth 1980, no writ). These cases are
not applicable to the present facts. Each of these cases simply holds that,
following the perfection of an appeal, the trial court cannot enter an order
that interferes with the appellate court's jurisdiction. Ammex
Warehouse Co., 381 S.W.2d at 480 (explaining "[t]he
Court of Civil Appeals considered this temporary order to be an interference
with its jurisdiction of the case which had been invoked by giving notice of
appeal from the final judgment"); Bridas Corp., 16
S.W.3d at 889 (holding that trial court possessed jurisdiction to issue
anti-injunction relief following perfection of appeal because the trial court's
order did not undermine or interfere with appellate court jurisdiction or modify
the final judgment); Atkins, 597 S.W.2d at 781-82
(recognizing appellate court's authority to issue writ of prohibition to
preserve subject matter of appeal because "any attempt by the trial court
to force Karten to pay the disputed amount over which an appeal is pending would
clearly interfere with our jurisdiction").
The order here does not interfere with this court's appellate
jurisdiction. We have found no case law supporting the proposition that the
filing of a notice of appeal deprives the trial court of jurisdiction to sign an
order during its plenary power on a motion filed, heard, and verbally ruled upon
prior to perfection of the appeal. We hold that the filing of a notice of appeal
by Dawson did not deprive the trial court of jurisdiction to sign an order
during its plenary power granting Briggs's motion to amend the citation.
We next address Dawson's contention that during its period of plenary
power the trial court possesses only power to grant a new trial or to vacate,
modify, correct, or reform the judgment. See Tex. R. Civ.
P. 329b(d), (e). The Texas Supreme Court has held that the trial court may enter
a postjudgment order granting amendment of a return of citation pursuant to rule
118 during its plenary power. Higginbotham v. Gen. Life and
Acc. Ins. Co., 796 S.W.2d 695, 696 (Tex. 1990). The
trial court in Higginbotham entered a default judgment,
and the defendants timely filed motions for new trial complaining
that service was improper because the person served was not an officer or
registered agent of the defendants. Id. Although the
return indicated process was served at 12:01 p.m., it did not state that time
was during the defendants' normal business hours or that process was served at
the defendants' home office. Id.; Gen.
Life and Acc. Ins. Co. v. Higginbotham, 750 S.W.2d 19, 20 (Tex. App.--Fort
Worth 1988), rev'd, 796 S.W.2d 695 (Tex. 1990). Following
an evidentiary hearing, the trial court denied the defendants' motions for new
trial by written order. Higginbotham,
796 S.W.2d at 696. In the order denying the defendants' motions for new
trial, the trial court expressly found that the person served was an employee of
the defendants and that service was proper under insurance code article 3.64,
which allowed service of a domestic company by leaving a copy of process at the
home office of the company during business hours. Id. This
court reversed the trial court's default judgment, holding that the record
before us failed to affirmatively demonstrate proper service.(1)
Higginbotham, 750 S.W.2d at 20.
The supreme court held that the recitation in the order denying the
defendants' motions for new trial indicating service was proper under insurance
code article 3.64 was "tantamount to" an order amending the return of
citation under rule 118 to reflect service during the defendants' normal
business hours at the defendants' home offices. Higginbotham,
796 S.W.2d at 696. Thus, the supreme court held that, based on the amended
return, the record reflected proper service. Id. The
supreme court reversed this court's judgment reversing the default judgment and
affirmed the trial court's default judgment. Id. The
supreme court in Higginbotham therefore recognized that a
trial court possesses jurisdiction to permit a postjudgment amendment of
citation pursuant to rule 118 during its period of plenary power. Id.;
see also Mylonas v. Tex. Commerce Bank-Westwood, 678
S.W.2d 519, 521-22 (Tex. App.--Houston [14th Dist.]
1984, no writ) (upholding default judgment following postjudgment amendment of
the return of citation to add the word "Drive"
so that it showed service at 5271 Memorial Drive); see
also Walker v. Brodhead, 828 S.W.2d 278, 281-83 (Tex. App.--Austin 1992,
writ denied) (holding trial court properly allowed return of
citation to be amended to add verification twenty-two months after entry of
judgment); Zaragoza v. De La Paz Morales, 616 S.W.2d 295,
296 (Tex. Civ. App.--Eastland 1981, writ ref'd n.r.e.) (op. on reh'g) (holding
that trial court could have permitted an amendment of the proof of service while
it had jurisdiction, but that plaintiff's affidavit from deputy sheriff
obtained on April 3, 1981 and submitted to appellate court on rehearing after
issuance of court's opinion on March 26, 1981 was not proper amendment).
Dawson points out that the Texas Supreme Court wrote in Primate
Construction Inc. v. Silver, "the one requesting service
must amend the return prior to judgment." 884 S.W.2d 151, 153
(Tex. 1994). The supreme court did not cite any authority, neither rule 118 nor
any case law, for this proposition. This statement in Primate is
mere dicta because the issue of an amendment of a return of citation was not
before the supreme court in Primate. Vespa
v. Nat'l Health Ins. Co., No. 02-02-00086-CV, slip op. at 2, 2003 WL
253377, at *3 (Tex. App.--Fort Worth Feb. 6, 2003, no pet.) (Livingston, J.,
concurring). The court was simply explaining the fact that rule 118 provides a
remedy to a plaintiff who has improperly served a defendant. Id.
Moreover, the supreme court's statement in Primate
conflicts with its holding in Higginbotham, where the
supreme court reversed this court for refusing to acknowledge the trial court's
postjudgment amendment of the return of citation. Primate
did not cite or overrule Higginbotham. Likewise, the case
cited by Dawson for the proposition that a default judgment must be reversed if
the return of citation is not verified when process is served by an authorized
person did not involve any effort to amend the return under rule 118. Sieb
v. Bekker, 964 S.W.2d 25, 29 (Tex. App.--Tyler 1997, no writ) (reversing
default judgment based on lack of verification of return of citation by private
process server when "the plaintiff did not file a motion to amend the proof
of service under Tex. R. Civ. P. 118"). Consequently, the facts of that
case are distinguishable from the present facts where the return of citation was
actually ordered amended.
Here, the trial court conducted an evidentiary hearing on Briggs's
motion to amend the return of citation. Briggs called Ernest M. Kohl, the
authorized individual who served Dawson, to testify at the hearing. Kohl
testified that he served Dawson as reflected in the return of citation, but
admitted on cross-examination that he did not have the return verified in front
of a notary when he signed it. After the parties presented evidence and
arguments, the following transpired:

         THE COURT: I've been
 listening to your argument, Counsel, and - - and it seems to me that you have
 not denied the facts of service as found in the return. You're merely saying
 they didn't verify it.


         [Counsel for Dawson]:
 That's correct, Your Honor.


         . . . .


         THE COURT: I guess the
 thing that has me kind of hung up is that there's no contention at all that
 Ms. Dawson was not served, that is, that she did not know about this lawsuit
 for that year's period of time between the time Mr. Kohl delivered the papers
 to the address shown in the return and the date of the hearing on the default
 motion.


         Now, no motion to quash
 was filed.
         . . . .


         THE COURT: . . . I'm going
 to grant the motion to amend.


         . . . .


         [Counsel for Dawson]: Your
 Honor, would you state the basis for your granting the defendant's - - the
 plaintiff's motion. Could I have a record on this?


         THE COURT: I think the
 rule [118] allows for the amendment. And the amendment deals not - - I'm
 impressed with the fact that it doesn't deal with any of the factual
 assertions contained in this - - in the return. It only deals with adding the
 verification that says all of these facts are true. So that's basically why
 I'm doing it. And there's been nothing to indicate that any of the factual
 assertions are not true.

The trial court signed a June 17, 2002 order granting Briggs's motion
to amend the return of citation. The order decrees that "the Officer's
Return of Citation is amended to reflect that it was verified by the person who
served Defendant, Kelly Renee Dawson, with the citation." We hold that the
trial court here possessed jurisdiction to order, during its plenary power,
amendment of the citation pursuant to rule 118. Tex. R. Civ. P. 118
(providing that "[a]t any time" the trial court may allow process or
proof of service to be amended); see Higginbotham,
796 S.W.2d at 696 (recognizing postjudgment amendment of citation pursuant
to rule 118); Mylonas, 678
S.W.2d at 521-22 (same).
In her reply brief, Dawson claims that Briggs failed to actually amend
the return of citation or alternatively, that Kohl's subsequently filed
affidavit verifying the original return is defective. The trial court's June 17,
2002 order granting Briggs's motion to amend the citation also effectively
amended the citation. It expressly provided, "the Officer's Return of
Citation is amended to reflect that it was verified by the person who served
Defendant, Kelly Renee Dawson, with the citation." Thus, no further action
by Briggs was necessary. We decline to follow Dawson's proposition that although
the trial court, after hearing Kohl's testimony, granted Briggs's motion to
amend and decreed that the return "is amended to reflect
that it was verified by the person who served [Dawson]," nonetheless
some additional action by Briggs was necessary to amend the return. The trial
court's June 17, 2002 order effectively amended the return. See
Higginbotham, 796 S.W.2d at 697 (indicating trial court's order was
tantamount "to an order amending return"). We overrule Dawson's first
issue.(2)
IV. Sufficiency of
the Evidence of Damages
In her second issue, Dawson claims that the evidence is legally and
factually insufficient to support the award of $233,515.62 in damages to Briggs.
Once a default judgment is taken against a nonanswering defendant on an
unliquidated claim, all allegations of fact set forth in the petition are deemed
admitted, except for the amount of damages. Arenivar v.
Providian Nat'l Bank, 23 S.W.3d 496, 497-98 (Tex. App.--Amarillo 2000, no
pet.) (citing Tex. Commerce Bank, Nat'l Ass'n v. New, 3
S.W.3d 515, 516 (Tex. 1999)). If the damages being claimed are unliquidated, the
court rendering a default judgment must hear evidence on damages. Tex. R. Civ.
P. 243; Holt Atherton Indus., Inc. v. Heine, 835 S.W.2d
80, 83 (Tex. 1992); Arenivar, 23 S.W.3d at 497-98. The
legal and factual sufficiency of evidentiary support for the amount of
unliquidated damages may be challenged on appeal. Arenivar,
23 S.W.3d at 498 (citing Otis Elevator
Co. v. Parmelee, 850 S.W.2d 179, 180-81 (Tex. 1993)).
When a specific attack is made upon the legal or factual sufficiency of
the evidence to support the trial court's determination of damages in a default
judgment, the appellant is entitled to a review of the evidence produced. Transp.
Concepts, Inc. v. Reeves, 748 S.W.2d 302, 304 (Tex. App.--Dallas 1988, no
writ) (citing Rogers v. Rogers, 561 S.W.2d 172, 173-74
(Tex. 1978)). In deciding a legal sufficiency challenge, we consider only the
evidence and inferences which, when viewed in the light most favorable to the
judgment, tend to support the judgment; we disregard all evidence and inferences
to the contrary. Glover v. Tex. Gen. Indem. Co., 619
S.W.2d 400, 401 (Tex. 1981). In determining a factual sufficiency challenge, we
consider all of the evidence in order to determine if the evidence supporting
the finding is so weak or the evidence to the contrary so overwhelming that the
judgment should be set aside and a new trial ordered. Garza v.
Alviar, 395 S.W.2d 821, 823 (Tex. 1965).
Briggs was the sole witness at the default judgment prove-up hearing.(3)
The record reflects that Briggs asked the trial court to award her the following
amounts:

 
 
 
 Past lost earnings
 $25,128.00
 
 
 Lost future earning capacity
 $50,000.00
 
 
 Pain, suffering and mental anguish in the past
 $50,000.00
 
 
 Pain, suffering and mental anguish in the future
 $25,000.00
 
 
 Physical impairment in the past
 $50,000.00
 
 
 Physical impairment in the future
 $25,000.00
 
 
 Medical expenses
 $
 8,237.62
 
 
 
 
 
 
 Total damages
 $233,515.62(4)
 
 
 

 
The trial court's judgment awards Briggs the global figure of
$233,515.62 plus prejudgment interest.
Generally, when the trial court does not itemize damages in its default
judgment, it is impossible to determine what portion of the damages were
ascribed to each ground of recovery claimed by the plaintiff. Pentes
Design, Inc. v. Perez, 840 S.W.2d 75, 80 (Tex. App.--Corpus Christi 1992,
writ denied). When, however, the plaintiff specifically requests and apparently
receives certain amounts for particular elements of damages in a default
judgment prove-up hearing pursuant to rule 243, we may review the sufficiency of
the evidence to support the specific awards requested and apparently received. Accord
Balogh v. Ramos, 978 S.W.2d 696, 700 (Tex.
App.--Corpus Christi 1998, pet. denied) (op. on reh'g) (recognizing that general
rule not applicable when the reporter's record reflects the amounts ascribed to
each ground of recovery claimed by the plaintiff), cert. denied,
528 U.S. 822 (1999); Jackson v. Gutierrez, 77 S.W.3d 898,
903 (Tex. App.--Houston [14th Dist.] 2002, no pet.)
(reviewing sufficiency of evidence to support claimed amounts of damages despite
default judgment's global damage award); Popkowsi v. Gramza,
671 S.W.2d 915, 918-19 (Tex. App.--Houston [1st Dist.]
1984, no writ) (reviewing sufficiency of evidence to support claimed lost
profits and medical expenses despite default judgment's global damage award).
Thus, we review the legal and factual sufficiency of the evidence to support the
damages requested and purportedly proved by Briggs.
        A. Past
Lost Earnings
Lost wages or earnings refers to the actual loss of income due to an
inability to perform a specific job from the time of injury to the time of
trial. Strauss v. Cont'l Airlines, Inc., 67 S.W.3d 428,
435 (Tex. App.--Houston [14th Dist.] 2002, no pet.); Border
Apparel-East, Inc. v. Guadian, 868 S.W.2d 894, 897 (Tex. App.--El Paso
1993, no writ). Briggs testified that as a result of the accident she suffered
pain in her head, neck, and back. Prior to the accident, Briggs had two jobs:
one as an assistant with American Airlines where she worked on a less than
part-time, as-needed basis and one working twenty hours a week in her husband's
office. Briggs explained that her husband is a doctor and that he paid her $9
per hour to work filing charts, pulling charts, and calling insurance companies.
After the accident, Briggs was unable to perform her job working in her
husband's office. She said that after the accident, she could not bend down or
look up to pull charts and could not be on the phone for extended periods
because it hurt her neck. Briggs testified that, but for the wreck, she would
have continued to work at her husband's office and would have earned $25,128
between the date of the accident and the date of the default judgment hearing.
Viewed in the light most favorable to the trial court's judgment, this evidence
is factually sufficient to support an award of $25,128 in past lost wages.(5) 
See, e.g., Transp. Concepts, Inc., 748 S.W.2d at
304.
        B. Lost
Future Earning Capacity
Lost earning capacity concerns the impairment to one's ability to work.
Koko Motel, Inc. v. Mayo, 91 S.W.3d 41, 51 (Tex.
App.--Amarillo 2002, pet. filed); Guadian, 868 S.W.2d at
897. It entails the consideration of what the plaintiff's capacity to earn a
livelihood actually was and assesses the extent to which it was impaired. Koko
Motel, Inc., 91 S.W.3d at 51. Factors such as stamina, efficiency, ability
to work with pain, and the weakness and degenerative changes which naturally
result from an injury and from long-suffered pain are legitimate considerations
in determining whether or not a person has experienced an impairment in future
earning capacity. Rendon v. Avance, 67 S.W.3d 303, 312
(Tex. App.--Fort Worth 2001, pet. granted, cause remanded to trial court w.r.m.)
(quoting Springer v. Baggs, 500 S.W.2d 541, 544-45 (Tex.
Civ. App.--Texarkana 1973, writ ref'd n.r.e.)). In order to support a claim for
lost earning capacity, the plaintiff must introduce evidence from which the
fact-finder may reasonably measure in monetary terms his earning capacity prior
to injury unless some reason appears for his failure to do so. Strauss,
67 S.W.3d at 435. Calculating the extent of impairment of earning capacity,
however, constitutes an exercise in uncertainty. McIver v.
Gloria, 140 Tex. 566, 568, 169 S.W.2d 710, 712 (1943).
Briggs testified that, for the balance of her life, she would be
limited in the type of work she would be able to perform because of the injuries
she sustained in the car accident. The reasonable inferences from Briggs's
testimony and the context in which it was given are that she will continue to be
unable to bend down, to look up to pull charts, or to be on the phone for
extended periods. She will be unable to resume her job at her husband's office
or to perform any similar type of work. This evidence is legally sufficient to
support some measure of lost future earning capacity damages. See,
e.g., Brazoria County v. Davenport, 780
S.W.2d 827, 832 (Tex. App.--Houston [1st Dist.] 1989, no
writ).
In the year between the accident and the default judgment prove-up
hearing, Briggs lost $25,128 in wages due to her injuries. The trial court
apparently awarded her approximately twice that amount as future lost earnings.
No evidence to the contrary exists, and Briggs's testimony on this issue is not
so weak that we can say the evidence is factually insufficient to support an
award of $50,000 for her future lost earning capacity. See,
e.g., McIver, 140 Tex. at 570, 169 S.W.2d at 713; Brazoria
County, 780 S.W.2d at 832.
        C.
Pain, Suffering, and Mental Anguish in the Past
The process of awarding damages for amorphous, discretionary injuries
such as mental anguish or pain and suffering is inherently difficult because the
alleged injury is a subjective, unliquidated, nonpecuniary loss. Dollison
v. Hayes, 79 S.W.3d 246, 253 (Tex. App.--Texarkana 2002, no pet.).
The process is not readily susceptible to objective analysis. Id.
The presence or absence of pain, either physical or mental, is an
inherently subjective question. Id.
Briggs testified that as a result of the accident she went to see Dr.
Jeffrey Heitkamp, M.D., Dr. Joseph Stephens, M.D., her dentist, Dr. Curtis
Gleaton, and an oral surgeon named Dr. Carroll Carver. Dr. Heitkamp took x-rays
of her spine, chest, and shoulders. He took an MRI of Briggs's head. He
determined that Briggs had suffered significant physical injuries as a result of
the wreck, diagnosed her with a cervical strain, and prescribed three months of
physical therapy. Briggs attended physical therapy for three months and the
therapy helped, but at the time of the prove-up hearing, Briggs was still
required by her physical therapist to do some home exercises. Briggs testified
that she still experiences pain in her back and neck as a result of the wreck
and said she presently takes over-the-counter pain relievers to help her deal
with the pain.
Briggs went to Dr. Stephens because when Dawson hit her from behind
during the wreck, her chest hit the steering wheel of her car. She experienced
swelling and pain in her chest and became concerned that the force of the wreck
caused her breast implants to rupture. Although the tests performed by Dr.
Stephens did not indicate that Briggs's implants had ruptured, he performed
surgery to remove them. Dr. Stephens's operative report states:

 INDICATIONS: The patient is a 48-year-old white female who has had
 breast implants for a number of years, placed by another surgeon. She had done
 well until an automobile accident in May 1999 at which time she suffered
 trauma to both breasts resulting in pain and marked bruising. Subsequently,
 she developed a progressive capsular contracture on both sides, but especially
 on the right side, which caused her constant discomfort. X-rays did not
 demonstrate any clear cut rupture of either implant but the discomfort was
 such that removal of the implants was requested, without replacement.

Briggs saw her dentist following the accident because she had pain,
swelling, and popping in her left jaw as a result of the accident. Although
Briggs underwent temporomandibular joint syndrome (TMJ) surgery thirteen years
before the accident, the wreck exacerbated her TMJ problems so that she must now
wear a bite splint at night. If she goes on a trip and forgets her splint,
"I will have -- popping will start again in my jaw, and then this side of
the ear, my ear will hurt and my jaw will hurt. So my jaw doesn't get
aligned."
Once the existence of some pain and suffering has been established,
there is no objective way to measure the adequacy of the amount awarded as
compensation, which is generally left to the discretion of the fact-finder. Pentes
Design, Inc., 840 S.W.2d at 80. The amounts of damages awarded for pain and
suffering are necessarily speculative, and each case must be judged on its own
facts. Id.; see Sharp, Inc. v. Martinez,
900 S.W.2d 777, 784 (Tex. App.--Corpus Christi 1995, no writ) (op. on reh'g).
The evidence concerning Briggs's past neck and back pain, her three months of
physical therapy, the pain in her ear and jaw, and the pain in her chest,
constitutes legally and factually sufficient evidence to support an award of
$50,000 for past pain and suffering, without regard to any mental anguish
suffered by Briggs. See, e.g., Pentes
Design, Inc., 840 S.W.2d at 80 (upholding default judgment's award of
$500,000 for pain and permanent disfigurement for loss of two front teeth); Sharp,
Inc., 900 S.W.2d at 784 (upholding default judgment's award of $200,000 for
physical pain and suffering resulting from fractured arm in slip and fall case);
Popkowsi, 671 S.W.2d at 919 (upholding default judgment's
award of $50,000 based on evidence that the plaintiff suffered muscle damage,
dizzy spells, headaches, and permanent scarring as passenger in one vehicle
accident).
       
D. Pain, Suffering, and Mental Anguish in the Future
Briggs explained that she still suffers pain in her neck and back from
her injuries and mental anguish from the accident. She still suffers from pain
in her ear and jaw if she fails to wear the bite splint. This evidence is
legally and factually sufficient to support an award of $25,000 in future pain
and suffering. See, e.g., Weidner v. Sanchez, 14 S.W.3d
353, 372 (Tex. App.--Houston [14th Dist.] 2000, no
pet.).
        E.
Physical Impairment in the Past & Future
Physical impairment, sometimes called loss of enjoyment of life,
encompasses the loss of the injured party's former lifestyle. Schindler
Elevator Corp. v. Anderson, 78 S.W.3d 392, 412 (Tex. App.--Houston [14th
Dist.] 2001, pet. abated). Physical impairment is an element of damages that
extends beyond loss of earning capacity and beyond any pain and suffering, to
the extent that it produces a separate loss that is substantial or extremely
disabling. Id.; Dollison, 79 S.W.3d
at 253; Blankenship v. Mirick, 984 S.W.2d 771, 777 (Tex.
App.--Waco 1999, pet. denied). To receive damages for physical impairment, the
injured party must prove that the effect of his physical impairment extends
beyond any impediment to his earning capacity and beyond any pain and suffering,
to the extent that it produces a separate and distinct loss that is substantial
and for which he should be compensated. Schindler Elevator
Corp., 78 S.W.3d at 412. Therefore, even proof that one is entitled to
compensatory damages for pain and suffering, or for lost wages, does not
automatically entitle one to compensation for physical impairment. Dollison,
79 S.W.3d at 253. The party claiming such damages bears the burden of proving a
compensable injury. Id.
Here, the record before us contains only the following testimony
concerning Briggs's physical impairment:

         Q. And on your - - your
 daily activities - - let's look at them. Was there a disruption - - a
 substantial disruption of your daily activities?
         A. Yes.

               
. . . .

         Q. . . . And you've told
 us you - - you weren't able to carry on with your normal day-to-day
 activities, right?
         A. Yes.
         Q. Now, after today - -
 are your limitations still going to impair you in the future?
         A. Yes.
         Q. Is $50,000 a reasonable
 amount to award you for physical impairment in the past?
         A. Yes.
         Q. And is $25,000 a
 reasonable amount to award you for the physical impairment that you're going
 to continue to suffer into the future?
         A. Yes.

Briggs did not testify concerning what daily activities she was unable
to perform. Nor did she explain what activities she believed she would be
incapable of performing in the future. Although no mathematical standard exists
for the determination of the money damages for physical impairment, the
plaintiff must establish that physical impairment exists. Here, there is simply
no evidence of Briggs's past or future physical impairment as opposed to past
and future pain and suffering or future lost earning capacity.
        F.
Medical Expenses
Briggs offered her medical records and billing records into evidence at
the default judgment prove-up hearing via self-authenticating affidavits from
the record custodians. These records establish that Briggs incurred $8,237.62 in
medical expenses. Briggs's medical expenses are broken down via the self-proving
affidavits she utilized to prove them up as follows: $693.92 for x-rays and MRIs,
$910 for dental exams and general treatment, $3,295 for a mammogram, CT scans,
and physical therapy, $2,200 for breast implant removal, $150 for a neurological
exam, $150 for examination by an oral surgeon, and $333.07 for prescriptions.(6)
Dawson claims that many of Dr. Gleaton's charges appear to be for
routine dental exams and prophylactic treatment. Dawson is correct. However, as
discussed below, Dr. Gleaton executed an affidavit swearing that the treatments
he provided to Briggs were necessary for her proper treatment as a result of the
accident. See New, 3 S.W.3d at 517 (recognizing trial
court may rely upon unobjected-to hearsay evidence presented via affidavits at a
default judgment prove-up hearing). Dr. Gleaton's affidavit is contradicted
though, by the billing entries attached to it, some of which are clearly for
routine dental exams and cleanings. Consequently, we agree with Dawson that the
evidence is factually insufficient to show that the entirety of Dr. Gleaton's
$910 fee was for services necessitated by the accident. See
Jackson, 77 S.W.3d at 902 (plaintiff must prove medical expenses were
reasonably necessary for plaintiff to incur as result of her injuries).
        G.
Causation
Dawson claims that Briggs "failed to bring forth any medical
expert's testimony causally linking her TMJ to the auto accident" and
failed to prove that her breast implants ruptured as a result of the accident.
The entry of a default judgment operates as an admission of all allegations of
fact set out in plaintiff's petition, except as to unliquidated damages. Transp.
Concepts, Inc., 748 S.W.2d at 304. From this rule, it follows that a
default judgment admits that the defendant's conduct caused the event upon which
the plaintiff's suit is based. Morgan v. Compugraphic Corp.,
675 S.W.2d 729, 732 (Tex. 1984). At a default judgment prove-up hearing, the
plaintiff is still required, however, to prove the causal nexus between the
event sued upon and her injuries. Id.
Expert testimony is only one of several ways to prove proximate cause.
A fact finder may find the required causal nexus between the event sued upon and
the plaintiff's injuries when: (1) general experience and common sense will
enable a layperson fairly to determine the causal nexus; (2) expert testimony
establishes a traceable chain of causation from the injuries back to the event;
or (3) a probable causal nexus is shown by the expert testimony. Blankenship,
984 S.W.2d at 775. Generally, lay testimony establishing a sequence of events
that provides a strong, logically traceable connection between the event and the
condition is sufficient proof of causation. Morgan, 675
S.W.2d at 733. Lay testimony is adequate to prove causation in cases in which
general experience and common sense will enable a layman to determine, with
reasonable probability, the causal relationship between the event and the
condition. Id. Moreover, in rendering a default judgment,
a trial court may consider affidavits as evidence of unliquidated damages.
New, 3 S.W.3d at 517.
Here, Briggs testified that she had pain, swelling, and popping in her
jaw as a result of the accident. She sought medical treatment from her dentist
because of the pain, swelling, and popping in her jaw. Dr. Gleaton, Briggs's
dentist, treated her for this problem and she was still receiving treatment at
the time of the prove-up hearing. She is required to wear a bite splint, or her
jaw hurts and pops. She testified that prior to the accident, she did not wear a
bite splint. Additionally, Dr. Gleaton's dental records relating to Briggs
indicate that Briggs specifically sought Dr. Gleaton's treatment as a result of
the accident. A notation in Briggs's chart reads: "Pt presented w/ recent
history of auto accident and popping in left tempro mandibular joint." A
chart notation from a subsequent visit provides, "TMJ problems from
wreck." Finally, the medical records affidavit regarding Briggs's medical
treatment was executed by Dr. Gleaton and swore that the services he rendered
were necessary for the proper treatment of injuries suffered by Briggs on May
13, 1999, the date of the accident.
Briggs's lay testimony establishes a sequence of events that provides a
strong, logically traceable connection between the accident and her jaw
swelling, pain, and popping, which her dentist diagnosed as "TMJ
problems." This lay testimony is sufficient proof of causation. Morgan,
675 S.W.2d at 733. Moreover, Dr. Gleaton swore that the treatment he provided
was necessary to treat Briggs's injuries, "which precipitated the services
which are made subject herein." Accordingly, to the extent Dawson contends
expert testimony on causation was required, the record reflects Briggs provided
such expert testimony via Dr. Gleaton's affidavit.(7)
See New, 3 S.W.3d at 517. We hold that the evidence is
legally and factually sufficient to establish a causal nexus between the event
sued upon, i.e., the car accident, and Briggs's current TMJ problems.
We next address Dawson's contention that Briggs failed to prove her
breast implants ruptured. We agree that the record before us does not establish
that Briggs's implants ruptured. The record before us does, however, establish
that: Briggs's chest hit the steering wheel of her car when Dawson's vehicle hit
her from behind as she yielded to service road traffic while exiting Highway
360; Briggs suffered bruising, swelling, and pain in her chest area as a result
of the impact of the steering wheel; although Briggs had the implants for a
number of years, after the accident she continued to experience pain in her
chest and developed a progressive capsular contracture on both sides; Briggs was
in constant pain and desired to have the implants removed without replacement.
We hold that this evidence is legally and factually sufficient to establish a
sequence of events providing a strong, logically traceable connection between
the accident and Briggs's chest pain. See Morgan, 675
S.W.2d at 733. It was not necessary for Briggs to establish that her implants
ruptured in the accident. Legally and factually sufficient evidence exists
showing that the chest injury Briggs suffered in the accident ultimately
required, for pain management purposes, that her breast implants be removed.
We sustain Dawson's legal sufficiency challenges to Briggs's past and
future physical impairment damages. We sustain Dawson's complaint that the
evidence is factually insufficient to establish that all of the $910 services
provided by Dr. Gleaton were necessitated by the injuries Briggs suffered in the
accident. We overrule the balance of Dawson's second issue.
V. Conclusion
We affirm the trial court's default judgment holding Dawson liable for
causing the accident and for causing Briggs's injuries. We affirm the trial
court's judgment awarding: $25,128 for past lost earnings; $50,000 for lost
future earning capacity; $50,000 for pain, suffering and mental anguish in the
past; $25,000 for pain, suffering and mental anguish in the future; and
$7,327.62 in medical expenses ($8,237.62 minus Dr. Gleaton's $910 bill). See
Jackson, 77 S.W.3d at 904 (affirming liability portion of default judgment,
affirming award of $1,480 for lost wages, but reversing and remanding remaining
damage claims); Sharm, Inc., 900 S.W.2d at 786 (affirming
default judgment as to liability, affirming award of $400,000 for pain and
suffering and physical impairment, but reversing and remanding remaining damage
claims). We reverse that portion of the trial court's judgment awarding $50,000
for physical impairment in the past, $25,000 for physical impairment in the
future, and $910 for medical services provided by Dr. Gleaton. We remand the
past and future physical impairment claims and the medical expenses Briggs
claims she was required to incur from Dr. Gleaton as a result of the accident to
the trial court for a new trial on these damage claims. See
Holt Atherton Indus., Inc., 835 S.W.2d at 86 (holding that
when damages awarded in a default judgment are supported by either legally or
factually insufficient evidence, and those damages were proved up at an
uncontested hearing, we must remand the case for a new trial on those damage
issues).
 
                                                                       
SUE WALKER
                                                                       
JUSTICE
 
PANEL B: DAY, LIVINGSTON, and WALKER, JJ.
DELIVERED: May 1, 2003

1. Specifically, we held:

 [T]he trial court erred in awarding a default judgment against the
 appellants for the reason that the record does not affirmatively reflect that
 the defendants were properly served with citation in accordance with former
 article 3.64 of the Insurance Code, since the record does not affirmatively
 reflect that service of citation was left at the home office of either company
 during business hours. Higginbotham, 750 S.W.2d at 20.
 
 2.  In light of our holding that the trial court
 possessed jurisdiction to amend the return of citation, we need not address
 Briggs's contention in her appellee's brief that the amendment of the return
 of citation relates back to the initial filing of the return.
 3.  Briggs's medical records and bills were proved
 up via self-authenticating affidavits and were admitted into evidence at the
 hearing.
 4.  These figures actually total $233,365.62, but
 Dawson does not challenge this mathematical error, so we do not address it.
 5.  We do not review the legal sufficiency of the
 evidence to support this element of damages because Dawson concedes some
 evidence of lost wages exists.
 6.  These amounts total $7,731.99, not $8,237.62,
 but Dawson does not challenge this discrepancy.
 7.  In her reply brief, Dawson claims that
 Gleaton's affidavit is not competent evidence because, although it states that
 Gleaton is personally acquainted with the facts stated therein, it does not
 explain how Gleaton became familiar with the facts. Because the affidavit's
 attachments reflect that Gleaton himself provided dental services to Briggs as
 a result of the accident, we reject Dawson's contention.