

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-11-00927-CV

Corey A. **BELL**,
Appellant

v.

Trinidad M. **CASTRO**,
Appellee

From the 150th Judicial District Court, Bexar County, Texas
Trial Court No. 2010-CI-09739
Honorable Martha Tanner, Judge Presiding

Opinion by:    Phylis J. Speedlin, Justice

Sitting:       Phylis J. Speedlin, Justice
               Rebecca Simmons, Justice
               Steven C. Hilbig, Justice

Delivered and Filed:  November 21, 2012

AFFIRMED

In this personal injury case, Corey A. Bell challenges the award of damages to Trinidad M. Castro, arguing that there is no evidence of future physical impairment and factually insufficient evidence of future medical expenses and future physical pain and mental anguish. We affirm the judgment of the trial court.

**BACKGROUND**

Just before midnight on October 27, 2008, Bell ran a red light, causing his Ford Taurus to collide with Castro's Dodge Ram van. There was no dispute that Bell caused the accident. Castro did not seek medical attention at the scene of the accident; however, San Antonio Police Department Detective Pablo Arriaga, who responded to the accident, testified that Castro appeared to be in shock. Arriaga advised Castro to "get checked out."

Castro testified that he was very nervous after the accident, and worried about the men in the other car. He was able to drive his vehicle home. He stated that his left ankle began to swell and hurt the day after the accident. His left hand also became swollen a few days after the accident, but later healed. About twenty-nine days after the accident, with the pain in his ankle persisting, Castro, who works on his feet as a restaurant busboy, sought the care of a chiropractor. The chiropractor ordered an x-ray and MRI of Castro's ankle in January 2009. After three or four visits and no alleviation of pain, the chiropractor recommended that Castro seek treatment with another doctor. Dr. Sanjay Misra, an orthopedic surgeon, prescribed Castro medication and administered cortisone injections in his ankle, which did not help his pain. Castro stated that his ankle hurts when he moves a lot and swells two to three times a week; he has to be careful not to turn his foot a certain way, otherwise it makes a snapping or cracking sound and he feels "bone on bone." He stated that he did not have any problems with his ankle before the accident, and that he did not injure his ankle in any other way after the accident. He testified that he continues to have problems with his ankle and that it currently hurts. Castro further stated that he continues to work as a restaurant busboy, but uses an ankle brace for support and sometimes uses Icy Hot spray. Castro last saw Dr. Misra in September 2009, almost two years before trial. During the two years immediately prior to trial, Castro did not see another

physician for his pain or take any medications. Castro stated that he does not have the financial ability to pay for medical treatment, and would not have been able to seek medical treatment were it not for his attorneys.

Dr. Sanjay Misra was accepted as an expert witness by the trial court. Dr. Misra testified that he is an orthopedic surgeon who treated Castro beginning in May 2009. Dr. Misra interpreted the results of Castro's x-ray and MRI. The x-ray did not show any broken or fractured bones in the ankle. The MRI showed swelling in the marrow of the bone due to trauma from impaction. The MRI showed a 1.5 millimeter-lesion in the ankle bone, which Dr. Misra termed an osteochondral defect. Dr. Misra explained that an injury of this type does not manifest immediately after impact, and that it is difficult to repair. Dr. Misra was certain that Castro's "injury is definitely painful and is a result of the accident."

Dr. Misra first treated Castro with three separate cortisone injections; the last injection was given in August 2009. Dr. Misra prescribed pain medication at the end of May 2009 that was never refilled by Castro as of the date of trial. Castro's medical bills for treatment by Dr. Misra totaled about $857. His prescription drug bill was $204.34.

Castro continued to experience pain after the cortisone injections. Dr. Misra thus opined that Castro would not heal on his own, and recommended in September 2009 that he undergo surgery called ankle arthroscopy with osteochondral drilling. Dr. Misra explained that without surgery, the area of the injury would start "to crumble and deteriorate" and "spread," causing Castro to develop "total arthritis of the ankle joint." Dr. Misra stated that the total cost for that surgery, including surgeon fees, hospital fees, anesthesia fees, and rehabilitation fees would be about $20,000. After the surgery, Castro would be immobilized for about six weeks in a cast or boot, and would start physical therapy afterwards.

In his medical narrative, which was admitted into evidence, Dr. Misra stated, "I advised Mr. Castro even after the surgery he will have good and bad days for the rest of his life. As he gets older he will develop some arthritis in his left ankle and will continue to have chronic pain . . . . Essentially the patient is going to have some long term physical restrictions. I do not want him to do any heavy lifting beyond 10-15 lbs. and no overhead reaching activities[;] these are the restriction limitations he is under now and will be his restriction limitations in the future." Dr. Misra further opined that both now and in the future, Castro will need chronic over-the-counter pain medications like Motrin and Naprosyn, and occasional use of pain killers such as Ultram. The cost of future care, including doctor visits and medications, was estimated to be $5,000 a year for the rest of Castro's life. Dr. Misra testified that the average North American male has a life expectancy of about 80 years. Castro was 49 years-old on the date of the accident. Dr. Misra opined that Castro is going to have a ten percent total body impairment in the future even after the surgery.

At the charge conference, Bell objected to the submission of a damage question on future physical impairment.

The case was submitted to the jury who unanimously found Bell 100% responsible for the accident. The jury was asked "what sum of money, if paid now in cash, would fairly and reasonably compensate Trinidad M. Castro for his injuries, if any, that resulted from the occurrence in questions?" The jury answered as follows:

a. Past medical care expenses:                    $6,000
b. Future medical care expenses:                  $170,000
c. Past physical pain and mental anguish:         $25,000
d. Future physical pain and mental anguish:       $75,000
e. Future physical impairment:                    $25,000

None of the listed categories of damages were defined for the jury. The jury was instructed that it may not compensate twice for the same loss.

The trial court entered a judgment incorporating the entirety of the $301,000 in damages awarded by the jury, as well as costs and prejudgment interest. Thereafter, Bell filed a motion for new trial challenging the sufficiency of the evidence to support the award of damages and a motion to disregard the jury's finding on future physical impairment. After Castro agreed to a remittitur of $265.09 for past medical expenses, Bell's motions were denied by the trial court. The trial court then entered a Modified Final Judgment that reduced the damages for past medical expenses as per Castro's voluntary remittitur and reduced the amount of prejudgment interest. Bell timely appealed.

### DISCUSSION

On appeal, Bell challenges three categories of damages awarded by the jury.

### I.    FUTURE PHYSICAL IMPAIRMENT

Bell first argues that the trial court erred in refusing to grant his motion to disregard the jury finding for future physical impairment because there is no evidence to support an award for future physical impairment damages.

***Standard of Review and Applicable Law***

The denial of a motion to disregard a jury finding is reviewed as a no-evidence or legal sufficiency issue. *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005). When considering a legal sufficiency challenge, we review the evidence in the light most favorable to the verdict giving "credit [to] favorable evidence if reasonable jurors could, and disregard[ing] contrary evidence unless reasonable jurors could not." *Id.* at 827. We must determine "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under

review." *Id.* Evidence is legally insufficient when the record discloses: (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *Id.* at 810.

Physical impairment is defined as the loss of a person's former lifestyle. *See Casas v. Paradez*, 267 S.W.3d 170, 188 (Tex. App.—San Antonio 2008, pet. denied). The effect of any physical impairment must be substantial and extend beyond any pain, suffering, mental anguish, lost wages, or diminished earning capacity. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 772 (Tex. 2003); *Tagle v. Galvan*, 155 S.W.3d 510, 519 (Tex. App.—San Antonio 2004, no pet.); *Patlyek v. Brittain*, 149 S.W.3d 781, 785 (Tex. App.—Austin 2004, pet. denied). Thus, to recover damages for physical impairment, the plaintiff must show: (1) he incurred injuries that are distinct from, or extend beyond, injuries compensable as pain and suffering, loss of earning capacity, or other damage elements; and (2) these distinct injuries have had a "substantial" effect. *Tagle*, 155 S.W.3d at 519. "Unless the separate and distinct loss is obvious, the plaintiff must produce some evidence showing the tasks or activities that he can no longer perform." *Plainview Motels, Inc. v. Reynolds*, 127 S.W.3d 21, 39 (Tex. App.—Tyler 2003, pet. denied) (citing *Southern Pac. Transp. Co. v. Harlow*, 729 S.W.2d 946, 950-51 (Tex. App.—Corpus Christi 1987), *writ dism'd, improvidently granted*, 745 S.W.2d 320 (Tex. 1988)).

*Analysis*

Castro was awarded $25,000 for future physical impairment. Bell argues there is no evidence to support this award because there was no testimony that Castro sustained a loss separate and distinct from pain and suffering or mental anguish. We disagree. Although we

recognize that Castro did not present evidence showing what tasks and activities he was unable to enjoy as a result of the accident, there was uncontroverted testimony by Dr. Misra that Castro would suffer physical impairment in the future. Dr. Misra testified that Castro would be immobilized for six weeks after the surgery in a cast or a boot. Further, Dr. Misra stated that Castro would suffer a ten percent total body impairment even after the surgery and would be restricted from lifting anything heavier than 10-15 pounds and from reaching overhead. *See Brookshire Bros., Inc. v. Lewis*, 997 S.W.2d 908, 922-23 (Tex. App.—Beaumont 1999, pet. denied) (affirming award for future physical impairment where treating physician testified that plaintiff suffered a 27% impairment and had a lifting restriction of 20 pounds). Additionally, Dr. Misra testified that Castro would develop some arthritis in his left ankle as he ages. *See Blankenship v. Mirick*, 984 S.W.2d 771, 777-78 (Tex. App.—Waco 1999, pet. denied) (affirming award of $5,000 for future physical impairment where there was evidence that plaintiff could no longer do aerobic exercises, she did not walk as well, her knees gave out, and her physician stated likelihood of developing arthritis was much higher). Viewing this evidence in the light most favorable to the verdict, and disregarding all evidence to the contrary, we find there is more than a scintilla of evidence supporting the jury's award of future physical impairment damages. *See City of Keller*, 168 S.W.3d at 810; *Rosenboom Mach. & Tool, Inc. v. Machala*, 995 S.W.2d 817, 826 (Tex. App.—Houston [1st Dist.] 1999, pet. denied). Thus, the trial court did not err in denying Bell's motion to disregard the jury's finding for future physical impairment. We therefore overrule Bell's first issue.

II. FUTURE MEDICAL EXPENSES AND FUTURE PHYSICAL PAIN AND MENTAL ANGUISH

Bell next argues that the evidence is factually insufficient to support the damages awarded for (1) future medical expenses and (2) future physical pain and mental anguish.

*Standard of Review and Applicable Law*

We review an excessive damages claim using a factual sufficiency analysis. *See Pope v. Moore*, 711 S.W.2d 622, 624 (Tex. 1986). Therefore, we shall examine all the evidence to determine whether the award is supported by sufficient evidence and order a remittitur only if the award is so against the great weight and preponderance of the evidence as to be manifestly unjust. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001); *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986); *see also Casas*, 267 S.W.3d at 185.

"[T]he jury [generally has broad] discretion to award damages within the range of evidence presented at trial." *Gulf States Utils., Co. v. Low*, 79 S.W.3d 561, 566 (Tex. 2002); *Bundick v. Weller*, 705 S.W.2d 777, 783 (Tex. App.—San Antonio 1986, no writ). To that end, we are mindful that there is no certain standard to measure personal injury damages, and each case must stand on its own facts and circumstances. *See Baptist Mem'l Hosp. Sys. v. Smith*, 822 S.W.2d 67, 79 (Tex. App.—San Antonio 1991, writ denied). "The jury's findings may not be set aside merely because its reasoning in arriving at the amount of damages is unclear." *Vela v. Wagner & Brown, Ltd.*, 203 S.W.3d 37, 49 (Tex. App.—San Antonio 2006, no pet.). When the trial evidence supports a range of damages, an award within that range is an appropriate exercise of the jury's discretion, and a reviewing court is not permitted to speculate on how the jury actually arrived at its award. *Drury Sw., Inc. v. Louie Ledeaux #1, Inc.*, 350 S.W.3d 287, 292 (Tex. App.—San Antonio 2011, pet. denied); *see also Vela*, 203 S.W.3d at 49.

Nonetheless, we recognize that "[j]uries cannot simply pick a number and put it in the blank." *See Saenz v. Fidelity & Guar. Ins. Underwriters*, 925 S.W.2d 607, 614 (Tex. 1996). Moreover, this court has a "'duty to exercise sound judicial judgment and discretion in the ascertainment of what constitutes reasonable compensation for the injuries suffered.'" *Smith*,

822 S.W.2d at 79. In assessing personal injury damages, the jury has wide latitude in determining the amount of the award. *Tagle*, 155 S.W.3d at 518; *Sw. Tex. Coors, Inc. v. Morales*, 948 S.W.2d 948, 951 (Tex. App.—San Antonio 1997, no writ). The process of awarding damages for amorphous, discretionary injuries such as pain and suffering is inherently difficult because the alleged injury is a subjective, unliquidated, nonpecuniary loss. *Dawson v. Briggs*, 107 S.W.3d 739, 750 (Tex. App.—Fort Worth 2003, no pet.). The element of pain and suffering is not subject to precise mathematical calculations or objective analysis and is particularly within the province of the jury to resolve and to determine appropriate amounts. *Id.* at 750-51; *Morales*, 948 S.W.2d at 951-52.

Texas follows the "reasonable probability" rule for future damage for personal injuries. *See City of San Antonio v. Vela*, 762 S.W.2d 314, 320 (Tex. App.—San Antonio 1988, writ denied); *Tagle*, 155 S.W.3d at 519. The plaintiff must show there is a reasonable probability that such medical expenses will be incurred in the future. *Whole Foods Market Sw., L.P. v. Tijerina*, 979 S.W.2d 768, 781 (Tex. App.—Houston [14th Dist.] 1998, pet. denied). An award of future medical expenses is a matter primarily for the trier of fact to determine, and no precise evidence is required. *Vela*, 762 S.W.2d at 321; *Whole Foods*, 979 S.W.2d at 781. The trier of fact may base its award on the nature of the injuries, the medical care rendered before trial, and the condition of the injured party at the time of trial. *Vela*, 762 S.W.2d at 321. In order to "sustain a finding on future medical expenses, the plaintiff is not required to establish the future medical consequences of his injury by expert medical testimony grounded on 'reasonable medical probability.'" *Id.*

*Analysis*

Bell contends that the jury's award of $170,000 in damages for future medical expenses consisted of $20,000 for future surgery as well as $5,000 per year for pain medications and doctor visits for 30 years (i.e., the remainder of Castro's life) for a total of $150,000. Bell maintains that this award constitutes a double recovery because according to Dr. Misra, the proposed surgery will allow Castro's ankle to heal, and if the ankle is healed, Castro should not need an additional $150,000 for pain medications for the rest of his life. Thus, he argues, the award of both the cost to perform a surgery to alleviate pain and the cost of future pain medication for the rest of Castro's life constitutes an impermissible double recovery. *See Weeks Marine, Inc. v. Garza*, 371 S.W.3d 157, 162 (Tex. 2012) ("The basis of a double recovery challenge is that a party recovered twice for one injury.").

We disagree that the award for future medical expenses constitutes an impermissible double recovery. Bell misreads Dr. Misra's use of the term "heal" at trial. When asked about the specifics of the proposed arthroscopy with osteochondral drilling surgery, Dr. Misra answered that a hole would be drilled into the ankle lesion to "allow it to heal" and to inject stem cells. He further explained that during the surgery, he would drill into the talar dome of the ankle so that blood could be released from the bone marrow in hopes that "good cells . . . come back and heal that defect which has been impacted." Dr. Misra did not, however, state that the surgery would completely "cure" Castro's ankle. He specifically stated that even after the surgery, Castro would continue to have chronic pain and would have long-term physical restrictions. Dr. Misra stated that Castro would continue to need medications even after surgery, including over-the-counter medications such as Motrin and Naprosyn, and the occasional use of a pain killer such as Ultram. Dr. Misra testified that these medications would cost around $5,000

per year, and that doctor visits would be necessary to refill the prescription medications.  We conclude this evidence is sufficient to support an award of future medical expenses for the remainder of Castro's life.  *See Vela*, 762 S.W.2d at 321 (award of future medical expenses is a matter primarily for the trier of fact to determine, and no precise evidence is required).

Additionally, we conclude the evidence is sufficient evidence to support an award for future ankle surgery.  Dr. Misra testified that he first tried less aggressive treatments for Castro's ankle, yet the pain persisted and he opined that it would not improve without the recommended surgery.  Dr. Misra stated that the cost of surgery would be about $20,000, including fees for the hospital, surgeon, anesthesiologist, and rehabilitation.  Considering all the evidence in the record, the jury could have reasonably concluded that there is a "reasonable probability" that Castro would incur surgery expenses in the future.  *See id.*  Again, we hold that this evidence is sufficient to support the jury's award for future medical care expenses, including the cost of surgery and drugs.  *See id.*  The evidence presented at trial as to these expenses was not so weak as to be clearly wrong, unjust, or against the great weight and preponderance of the evidence.  *See Dow Chem.*, 46 S.W.3d at 242.  Accordingly, we overrule Bell's complaint regarding future medical care expenses.

Finally, Bell argues that there is insufficient evidence to support the award for future physical pain and mental anguish damages, and that such award constitutes a double recovery.  Bell again argues as follows: "Given the absence of any explanation as to the need for pain medications if the recommended surgery takes place, there is insufficient evidence to support an award of $75,000 for future physical pain and mental anguish.  Ultimately, this award is nothing other than additional compensation for the same injury to Castro's ankle."

As previously discussed, we disagree with Bell's premise that Castro must choose between the surgery and future medical care. The jury heard evidence that Castro will continue to suffer chronic ankle pain in the future, even after the recommended surgery. Additionally, Dr. Misra stated that Castro will develop some arthritis in his left ankle as he ages. On this record, we cannot say the jury's award of $75,000 for future physical pain and mental anguish[1] is against the great weight and preponderance of the evidence. Thus, we conclude the evidence is factually sufficient to support the jury's award for future physical pain and mental anguish. Accordingly, we overrule Bell's final issue.

## CONCLUSION

Having overruled Bell's issues on appeal, we affirm the judgment of the trial court.

Phylis J. Speedlin, Justice

---

[1] Because Castro did not identify a specific "high degree of mental pain and distress" experienced by him, or a substantial disruption of his daily routine, the evidence in this record is insufficient to support an award for future mental anguish. *See Service Corp. Intern. v. Guerra*, 348 S.W.3d 221, 232 (Tex. 2011). However, Bell did not challenge the charge which asked for a lump sum for both future physical pain and mental anguish damages. Because Bell did not draw the trial court's attention to the insufficiency of the evidence to support an award of future mental anguish damages, separate and apart from future physical pain damages, during the charge conference, in closing arguments, or in a motion for new trial, he is limited to challenging the sufficiency of the evidence supporting the damage award as a whole. *See Ake v. Monroe*, No. 04-05-00751-CV, 2006 WL 3017181, at *4, (Tex. App.—San Antonio Oct. 25, 2006, no pet.) (mem. op.) (citing *Thomas v. Oldham*, 895 S.W.2d 352, 359-60 (Tex. 1995), and *Tagle*, 155 S.W.3d at 514-16).