COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-04-163-CV
 
 
SAMUEL RICHARD GIBBINS,                                                   APPELLANT
INDIVIDUALLY AND D/B/A
DELANYA'S SMOKE PIT
 
V.
  
GREGORY S. BERLIN AND ROBERT                                          APPELLEES
M. MERZ, INDIVIDUALLY AND
D/B/A FAIR GAME VENDING
   
------------
 
FROM THE 17TH DISTRICT COURT 
OF TARRANT COUNTY
 
------------
 
OPINION
 
------------
I. Introduction
        This 
is an appeal by Samuel Richard Gibbins (“Gibbins”), individually and d/b/a 
Delanya’s Smoke Pit, from a judgment in favor of Gregory S. Berlin 
(“Berlin”) and Robert M. Merz (“Merz”), individually and d/b/a Fair Game 
Vending, following a jury trial, wherein Gibbins asserts error by the trial 
court in two points: (1) inclusion in the charge of the court of an improper 
instruction on self-defense or alternatively, the refusal by the trial court to 
include a question on the issue of self-defense, and (2) the absence of legally 
and factually sufficient evidence of past and future physical pain and mental 
anguish to support a judgment for Berlin and Merz.
II. Background
        A. Round One—The Fight
        This 
is the case of the double knock-out. On the evening of August 10, 2001, Berlin 
and Merz visited the Smoke Pit, a restaurant and bar on the east side of Fort 
Worth. The purpose of their visit was to inspect a jukebox that belonged to 
their business, Fair Game Vending, and that had been installed at the Smoke Pit 
for the previous five years. They had each consumed four or five beers before 
getting to the restaurant but denied that they were intoxicated. Upon arrival, 
they discovered that their jukebox was unplugged and turned to the wall because 
Gibbins, the Smoke Pit’s new owner, had purchased his own jukebox. A 
disagreement ensued over the jukebox situation, and Berlin and Merz were asked 
by Gibbins to take their jukebox and leave. The attempted jukebox removal killed 
the sound from Gibbins’s new jukebox, resulting in Gibbins telling them to 
leave and come back the next day. Fisticuffs ensued, with Gibbins being the last 
man standing. Gibbins and three eye witnesses testified that Berlin and Merz 
started the altercation when Berlin shoved Gibbins, but Berlin and Merz claimed 
Gibbins “sucker punched” them without warning. The fight consisted of two 
punches. Gibbins, a former golden glove fighter, hit Berlin once and broke his 
jaw, and then hit Merz and broke his jaw. They were both down and out.
        B. Round Two—The Damages
        As 
a result of the melee, Berlin suffered a broken jaw occasioned by swelling and 
bleeding. His facial injuries necessitated the insertion of a metal plate, and 
his mouth was wired shut for several weeks. He also received a fractured 
collarbone, damage to his shoulder, and lacerations to his face when he hit the 
floor. He testified that he had continued to have pain in his collarbone and 
shoulder, numbness in his jaw, and had suffered disfigurement to his face. Merz 
fared little better. He likewise had a metal plate inserted in his jaw, his 
mouth was wired shut, and he was required to have oral surgery. Merz testified 
that he continued to have pain and sensitivity in his jaw, and his face was 
disfigured.
        C. Round Three—The Litigation
        Berlin 
and Merz sued Gibbins for assault, claiming they had not laid a glove on him, 
and Gibbins counterclaimed against Berlin and Merz for trespassing and assault. 
The case went to trial before a jury in November 2003, with Berlin and Merz 
still asserting assault and alleging conversion of their business equipment and 
personal property. By the time of the charge conference, Gibbins had abandoned 
his counterclaim for assault and instead was requesting a question on 
self-defense, that is, legal justification for the alleged assault, or 
alternatively an instruction on self-defense. The trial court ultimately asked 
the jury if Gibbins assaulted Berlin, and if he assaulted Merz, to which the 
jury answered both in the affirmative. A conditional damage question followed, 
wherein Berlin was awarded $100,000 for past physical pain and mental anguish, 
$250,000 for future pain and mental anguish, $25,000 for disfigurement in the 
past, and $50,000 for impairment in the past. Correspondingly, Merz was awarded 
$100,000 for past physical pain and mental anguish, $100,000 for future pain and 
mental anguish, $25,000 for disfigurement in the past, and $50,000 for 
impairment in the past.  Following the verdict, Gibbins filed a motion for 
judgment not withstanding the verdict, or alternatively for remittitur, and 
objections to the proposed judgment of Berlin and Merz.  In response, 
Berlin and Merz remitted a portion of their total verdict, resulting in an award 
of $212,500 to Berlin and $137,500 to Merz, exclusive of interest.  Motions 
for new trial were denied, followed by this appeal.
III. Charge of the Court
        In 
his first point, Gibbins asserts error on the part of the trial court (1) by 
failing to give a question on self-defense and (2) by improperly wording the 
instruction on self-defense contained in the paragraph defining assault.
        A. The Standard of Review
        Error 
in a jury charge is reversible if it probably caused the rendition of an 
improper judgment. Tex. R. App. P. 
44.1(a); In re D.I.B., 988 S.W.2d 753, 756 (Tex. 1999). To preserve a 
complaint premised on the jury charge for appellate review, a party must point 
out distinctly the objectionable matter and the grounds for the objection. Tex. R. Civ. P. 274. The test for 
preservation of a jury charge complaint is whether the party made the trial 
court aware of the complaint, timely and plainly, and obtained a ruling. Tex. R. App. P. 33.1(a); see State 
Dep’t of Highways & Pub. Transp. v. Payne, 838 S.W.2d 235, 241 (Tex. 
1992) (op. on reh’g). The court must review the entire record to determine 
whether the instruction amounted to reversible error. Quantum Chem. Corp. v. 
Toennies, 47 S.W.3d 473, 480 (Tex. 2001); Urista v. Bed, Bath & 
Beyond, Inc., 132 S.W.3d 517, 521 (Tex. App.—Houston [1st Dist.] 2004, 
pet. filed). An incorrect instruction is especially likely to cause reversible 
error when the evidence is conflicting and the issues hotly contested. Quantum 
Chem. Corp., 47 S.W.3d at 480; Urista, 132 S.W.3d at 521.
        We 
review a trial court’s decision to submit an instruction for an abuse of 
discretion. Goose Creek Consol. Indep. Sch. Dist. v. Jarrar’s Plumbing, Inc., 
74 S.W.3d 486, 499 (Tex. App.—Texarkana 2002, pet. denied). The test for abuse 
of discretion is not whether, in the opinion of the reviewing court, the facts 
present an appropriate case for the trial court’s action. Rather, the question 
is whether the trial court acted without reference to any guiding rules and 
principles. Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 
(Tex. 1985), cert. denied, 476 U.S. 1159 (1986).
        B. Charge of the Court
        In 
its charge to the jury, the trial court asked in question 1a, “Did Samuel 
Richard Gibbins commit an assault against Gregory S. Berlin?” The same 
question was asked as to Robert Merz in question 1b. In the paragraph preceding 
that question, the court defined assault and instructed the jury on self-defense 
as follows:
  
A person commits an assault if he (1) intentionally, knowingly, or recklessly 
causes bodily injury to another; (2) intentionally or knowingly threatens 
another with imminent bodily injury; or (3) intentionally or knowingly causes 
physical contact with another when he or she knows or should reasonably believe 
that the other will regard the contact as offensive or provocative.  A 
person is justified in using force against another when and to the degree the 
person reasonably believes the force is immediately necessary to protect himself 
against the other’s use or attempted use of unlawful force.  A person has 
the right of self-defense against multiple assailants if, viewed from the 
person’s standpoint, the person believed he was in danger of an unlawful 
attack or a threatened attack at the hand of more than one assailant.
 
 
        The 
definition of assault is the same, whether in a civil or criminal trial. Rogers 
v. Peeler, 146 S.W.3d 765, 769 (Tex. App.—Texarkana 2004, no pet.) (citing 
Forbes v. Lanal, 9 S.W.3d 895, 900 (Tex. App.—Austin 2000, pet. 
denied)). A person commits assault under the Penal Code if the person 
intentionally, knowingly, or recklessly causes bodily injury to another. Tex. Pen. Code Ann. § 22.01 (Vernon 
Supp. 2004-2005).
        Similarly, 
with the exception of the rule of evidence that gives a person accused of a 
crime the benefit of a reasonable doubt, the law of self-defense is the same in 
both civil and criminal cases. Forbes, 9 S.W.3d at 900; Foster v. H.E. 
Butt Grocery Co., 548 S.W.2d 769, 771 (Tex. Civ. App.—San Antonio 1977, 
writ ref’d n.r.e.). Under section 9.31 of the Penal Code, a person is 
justified in using force against another when, and to the degree, such person 
reasonably believes the force is immediately necessary to protect himself or 
herself against the other’s use or attempted use of unlawful force. Tex. Pen. Code Ann. § 9.31(a) (Vernon 
2003). Whereas we recognize that in criminal law, self-defense is a 
justification and not an affirmative defense, in civil law it is a plea in 
confession and avoidance. That is, it is an affirmative defense. Dotson v. 
State, 146 S.W.3d 285, 292 (Tex. App.—Fort Worth 2004, no pet.); Price 
v. Short, 931 S.W.2d 677, 687 (Tex. App.—Dallas 1996, no writ).
        We 
agree that the instruction is erroneous for two reasons. First, as worded, it 
fails to instruct the jury that they are to answer questions 1a and 1b “no” 
if they believe an assault was committed but that it was committed in 
self-defense or was justified. Even if the jury believed an assault occurred and 
it was occasioned by self-defense or was justified as they were instructed on 
those issues in this charge by the court, they were asked in question one to 
answer only whether an assault occurred without reference to self-defense or 
justification. Second, we believe the better practice and the appropriate method 
for handling self-defense in a civil assault case is to ask the jury a question 
concerning self-defense as opposed to including it in an instruction because (1) 
self-defense is a plea in confession and avoidance, that is, it is an 
affirmative defense that normally calls for a question to the jury as opposed to 
an inferential rebuttal, which is normally addressed by way of instruction in 
the court’s charge; (2) case law supports giving of separate questions on 
assault and self-defense, Norris v. Branham, 557 S.W.2d 816, 817 (Tex. 
App.—El Paso 1977, writ ref’d n.r.e); and (3) it is basically a way of 
asking the jury if the actions were legally justified or excused, and 
justification/excuse is normally given as a question. See Pattern Jury Charges, State Bar of Tex., Texas 
Pattern Jury Charges PJC 101.21, 106.3 (2003). “The plea of 
self-defense then is one of justification. It is based on a different set of 
facts from those establishing assault. As an affirmative defense it is 
considered as acknowledging the existence of prima facie liability but asserting 
a proposition which, if established, avoids such liability.” Norris, 
557 S.W.2d at 818.
        However, 
Berlin and Merz assert that the affirmative defense of self-defense was not 
pleaded prior to trial, and even if tried by consent, no trial amendment was 
requested. As such, they assert no question was required to be given to the jury 
because jury questions must be supported by pleading. We agree. It is undisputed 
that Gibbins requested a question on self-defense: “Did Samuel Richard Gibbins 
act in self-defense at the time . . . ?” It is also undisputed that Gibbins 
never pleaded self-defense, which is an affirmative defense. In re J.M., 
25 S.W.3d 364, 365 (Tex. App.—Fort Worth 2000, no pet.) (citing Price v. 
Short, 931 S.W.2d 677, 686 (Tex. App.—Dallas 1996, no writ)). Rule 278, 
Texas Rules of Civil Procedure, entitled Submission of Questions, Definitions, 
and Instructions, states in its first sentence that “[t]he court shall submit 
the questions, instructions, and definitions in the form provided by Rule 277, 
which are raised by the written pleadings and the evidence.” Tex. R. Civ. P. 278 (emphasis supplied). 
While Gibbins submitted the proposed question to the trial court on the issue of 
self-defense, which was rejected by the trial court and the instruction given, a 
trial court may refuse a tendered question for two reasons: (1) there is no 
evidence to justify the submission or (2) the issue is not pleaded. Rivera v. 
Herndone Marine Prods., Inc., 895 S.W.2d 430, 433 (Tex. App.—Corpus 
Christi 1995, writ denied) (citing Elbaor v. Smith, 845 S.W.2d 240, 243 
(Tex. 1992)). This standard is equally applicable to offensive and defensive 
issues. Tanenbaum Textile Co. v. Sidran, 423 S.W.2d 635, 638 (Tex. Civ. 
App.—Dallas 1967, writ ref’d n.r.e.). Further, it is well settled that 
affirmative defenses must be pleaded pursuant to Rule 94 of Texas Rules of Civil 
Procedure. This is also true in cases in which issues are tried by consent. McFadden 
v. Hale, 615 S.W.2d 345, 348 (Tex. Civ. App.—Waco 1981, no writ).
        Gibbins 
responds that Rule 67, Texas Rules of Civil Procedure, entitled Amendments to 
Conform to Issues Tried Without Objection, says that “[w]hen issues not raised 
by the pleadings are tried by express or implied consent of the parties, they 
shall be treated in all respects as if they have been raised in the pleadings . 
. . provided that written pleadings, before the time of submission, shall 
be necessary to the submission of questions, as is provided in Rules 277 and 279.” 
Tex. R. Civ. P. 67 (emphasis 
supplied). However, Rule 279 is inapplicable to the question before the court, 
and Rule 277 no longer contains the language that Rule 67 implies is there 
concerning the submission of questions to the jury. Prior to 1988, Rule 277 
stated in part, “In all jury cases the court may submit said cause upon 
special issues without request of either party, and upon request of either 
party, shall submit the cause upon special issues controlling the disposition of 
the case that are raised by the written pleadings and evidence in the 
case.” 661-662 S.W.2d (Tex. Cases) LXXVI, (1984, superseded 1988) (emphasis 
supplied).
        Gibbins 
asserts that the 1988 amendment eliminated the written pleading provision of 
Rule 277, and while the language was incorporated into Rule 278, Rule 67 does 
not refer to Rule 278. Therefore, he argues that the written pleading 
requirement for submission of issues tried by consent has been eliminated and 
that because all cases cited by Berlin and Merz standing for that proposition 
were decided before the 1988 amendment took place, they are inapplicable. We 
disagree with this position. First, Rule 278 plainly says that the questions, 
instructions, and definitions submitted by the court must be raised by the 
written pleadings and the evidence. Tex. R. Civ. P. 278 (emphasis supplied). 
Were this phrase “written pleadings or the evidence,” it would 
support Gibbins’s argument, but it does not. Second, Rule 67 retains the 
language that issues not raised by the pleadings but that are tried by consent 
“shall not affect the result of the trial of these issues . . . provided that written 
pleadings, before the time of submission, shall be necessary.” Tex. R. Civ. P. 67 (emphasis supplied). 
Third, the general commentary to that rule states that “by the time of 
submission any issues that are submitted must be based upon written pleading. 
Where this has not been before done submission, it is, of course, accomplished 
by amendment at the time of submission.” Tex. R. Civ. P. 67. cmt. Fourth, it is 
clear that the intent of the rules, as articulated in Rule 278, was to continue 
the requirement that issues submitted to the jury must be based upon the 
evidence and based on the written pleadings. Fifth, case law since 1988 
supports this position. For example, the El Paso Court of Appeals has held that
  
while a general denial puts into issue all matters pled by the adverse party . . 
. it does not raise a defensive issue of excused performance such as that 
offered by Appellants in this case.  Tex. 
R. Civ. P. 278.  As Rule 278 . . . makes abundantly clear . . . a 
party is not entitled to the submission of a question which was at best raised 
only by general denial but not by affirmative pleadings, even though the issue 
might be tried by consent.
 
 
Anderson 
v. Vinson Exp., Inc., 832 S.W.2d 657, 666 (Tex. App.—El Paso 1992, no 
writ) (emphasis supplied); see also Texas Capitals Sec., Inc. v. Sandefer, 
58 S.W.3d 760, 777 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) 
(affirmative defense of statutory exemption from registration required by 
written pleading by Rule 278 before being submitted to the jury).
        While 
acknowledging that this specific question concerning the omission of language 
from Rule 277 by the 1988 amendment may not have been raised in previous cases, 
this court holds that in cases tried by express or implied consent, a trial 
amendment containing affirmative defenses requested to be submitted to the jury 
is required to be filed prior to submission of the defensive issues to the jury. 
As no such trial amendment was requested, Gibbins’s first point is overruled.
IV. Physical Pain and Mental Anguish
        In 
his second point, Gibbins asserts that the evidence of past physical pain and 
mental anguish and future physical pain and mental anguish was legally and 
factually insufficient to justify the awards to Berlin and Merz.
        A. Standard of Review
        In 
determining a “no evidence” issue, we are to consider only the evidence and 
inferences that tend to support the finding of the disputed fact and disregard 
all evidence and inferences to the contrary. Bradford v. Vento, 48 S.W.3d 
749, 754 (Tex. 2001); Cont’l Coffee Prods. Co. v. Cazarez, 937 S.W.2d 
444, 450 (Tex. 1996); In re King's Estate, 150 Tex. 662, 244 S.W.2d 660, 
661 (1951). Anything more than a scintilla of evidence is legally sufficient to 
support the finding. Cont’l Coffee, 937 S.W.2d at 450; Leitch v. 
Hornsby, 935 S.W.2d 114, 118 (Tex. 1996). More than a scintilla of evidence 
exists if the evidence furnishes some reasonable basis for differing conclusions 
by reasonable minds about the existence of a vital fact. Rocor Int’l, Inc. 
v. Nat’l Union Fire Ins. Co., 77 S.W.3d 253, 262 (Tex. 2002).
        A 
“no evidence” issue may be sustained only when (1) the record discloses a 
complete absence of evidence of a vital fact, (2) the court is barred by rules 
of law or of evidence from giving weight to the only evidence offered to prove a 
vital fact, (3) the evidence offered to prove a vital fact is no more than a 
mere scintilla, or (4) the evidence establishes conclusively the opposite of a 
vital fact. Uniroyal Goodrich Tire Co. v. Martinez, 977 S.W.2d 328, 334 
(Tex. 1998), cert. denied, 526 U.S. 1040 (1999).
        To 
withstand a “no evidence” challenge, circumstantial evidence still must 
consist of more than a scintilla. Blount v. Bordens, Inc., 910 S.W.2d 
931, 933 (Tex. 1995). A jury may not reasonably infer an ultimate fact from 
meager circumstantial evidence that could give rise to any number of inferences, 
none more probable than another. Hammerly Oaks, Inc. v. Edwards, 958 
S.W.2d 387, 392 (Tex. 1997).
        An 
assertion that the evidence is “insufficient” to support a fact finding 
means that the evidence supporting the finding is so weak or the evidence to the 
contrary is so overwhelming that the answer should be set aside and a new trial 
ordered. Garza v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965). We are 
required to consider all the evidence in the case in making this determination, 
not just the evidence that supports the finding. Mar. Overseas Corp. v. Ellis, 
971 S.W.2d 402, 406-07 (Tex.), cert. denied, 525 U.S. 1017 (1998). 
Generally, we do not have to detail supporting evidence when upholding the 
factual sufficiency of the evidence underlying the trial court's judgment. Ellis 
County State Bank v. Keever, 888 S.W.2d 790, 794 (Tex. 1994).
        If 
the award is challenged as being excessive because there is factually 
insufficient evidence to support it, we should consider all the evidence that 
bears on that category of damages, even if the evidence also relates to another 
category of damages. Golden Eagle Archery, Inc. v. Jackson, 116 S.W.3d 
757, 773 (Tex. 2003). When conducting a factual sufficiency review, a court of 
appeals must not merely substitute its judgment for that of the trier of fact. Id. 
at 761. The trier of fact is the sole judge of the credibility of witnesses and 
the weight to be given to their testimony. Id.
        A 
jury is in the best position to see, hear, and evaluate the evidence and should 
be awarded great discretion in its determinations. Dawson v. Briggs, 107 
S.W.3d 739, 751 (Tex. App.—Fort Worth 2003, no pet.). This is particularly 
true in damage awards for pain and suffering because there are no objective 
measures analyzing damages of this sort, and for that reason it is best left to 
the province of the jury. Id.; see Hicks v. Ricado , 834 S.W.2d 
587, 591 (Tex. App.—Houston [1st Dist.] 1992, no writ). As this court noted in 
Dawson, “once the existence of some pain and suffering has been 
established, there is no objective way to measure the adequacy of the amount 
awarded as compensation, which is generally left to the discretion of the fact 
finder.” Dawson, 107 S.W.3d at 751. While it is true that the mere fact 
of the existence of an injury does not prove compensable pain and suffering, Biggs 
v. GSC Enterprises, Inc., 8 S.W.3d 765, 769 (Tex. App.—Fort Worth 1999, no 
pet.), it is also true that the evidence of continuing pain can support an award 
of future physical pain and mental anguish, Dawson, 107 S.W.3d at 752; Rosenboom 
Machine & Tool, Inc. v. Machala, 995 S.W.2d 817, 829 (Tex. 
App.—Houston [1st Dist.] 1999, pet. denied); Durham Transp., Inc. v. Valero, 
897 S.W.2d 404, 414-15 (Tex. App.—Corpus Christi 1995, writ denied);, and 
conversely, evidence of continually objective physical injuries precludes a take 
nothing verdict for future physical pain and mental anguish, Hicks, 834 
S.W.2d at 591.
        B. The Evidence
        The 
evidence of past and future physical pain and mental anguish for Berlin is not 
extensive. Berlin testifies as follows:
  
Q. Did you have damage to your right shoulder?
  
A. My shoulder was even more painful than my jaw. It was the clavicle or collar 
bone [that] was fractured and was dislocated. They had to put it back in.
 
. 
. . .

        Q. 
Where was your jaw broken?
 
A. 
It was broken here (indicating). That’s where they put the plate. And also up 
here (indicating), I think they call it the condyle by your ear. One time, after 
they cut the wires, it failed again, and then they had to tie it back up because 
it was broke in here (indicating).

        . 
. . .

        Q. 
Do you still have shoulder pain?
  
A. 
I do. In fact, one of the things I enjoy most in life is golf, and some days, 
you know, my backswing just kind of, to a small degree, the bones slip past each 
other, something kind of ratchets out of place, and it seems like it comes with 
[the] humidity.

        . 
. . .
 
Q. 
And do you have loss of feeling in your jaw?
 
A. 
I’ve got—the best I can describe it, it’s like a semicircle starting about 
here (indicating) coming down to my chin, yeah, over here (indicating). And 
it’s like I saw the dentist earlier today. You know, it’s like it’s still 
in Novocaine a little bit. I guess it’s nerve damage.
 
Q. 
Did you lose any teeth?
 
A. 
Yeah, as a matter of fact . . . . So that nerve—that nerve died and gave me a 
lot of problem . . . .

        . 
. . .
 
Q. 
And when did you make the decision to go to the hospital?
 
A. 
As soon as I got home and looked in the mirror. I couldn’t believe what I saw. 
I was shaken up and in some pain, mostly my shoulder, but I just could [not] 
believe what I saw in the mirror.

He 
also testified that the emergency room doctors wrestled and pushed his shoulder 
back in place, that the shoulder remained in a sling for over a month and he 
took pain medication for the pain, that excessive bleeding from his jaw forced 
him to sleep with his mouth open, and that he suffered mentally from looking at 
the damage to his face.
        As 
to Merz the following evidence was introduced, also solely in the form of 
Merz’s own testimony:
  
Q. Do you remember getting punched?
 
A. 
I just remember the dazed — dazed feeling, but it happened so quick, I don’t 
know.

        . 
. . .
 
Q. 
And what part of your face did you get struck on?
 
A. 
I don’t know if I got hit once or twice, but my jaw was broke. There’s a 
plate here (indicating), and there was also a fracture up here (indicating) on 
the other side of my face. That’s where all the swelling was.

        . 
. . .
 
Q. 
Do you have a metal plate in your jaw?
 
        A. 
Yes. 
 
        Q. 
And that’s going to be there forever?
 
A. 
Yes, I believe so.

        . 
. . .
 
Q. 
Do you have continued numbness in your jaw?
 
A. 
Yeah, like Greg said, I have pretty much the same as he has all the way from — 
it’s mainly the bottom lip down through [here] (indicating) and up to here, it 
feels as though it’s novocaine. It comes and goes. It’s not constant, but 
the sensitivity comes and goes.

        . 
. . .
 
Q. 
Have you felt personally conscience [sic] or conscientious about your outward 
appearance? Does it bother you?
 
A. 
Well, every day I feel the numbness and, yeah, yeah, yes.

He 
also testified that he required oral surgery for his jaw and that his mouth was 
wired shut for four weeks, that he continues to have problems with routine daily 
issues like eating, that he is concerned about his resulting appearance in which 
one side of his face is raised over the other and a “sloppy” smile.
        Based 
on the foregoing, the jury awarded to Berlin and Merz $100,000 each for past 
physical pain and mental anguish and $250,000 and $100,000 respectively to 
Berlin and Merz for future physical pain and mental anguish.[1]  
No expert testimony or documentary evidence such as medical records was 
introduced relevant to these issues.
        C. The Application
        Reviewing 
the evidence and bearing in mind our standard of review for legal sufficiency 
and that anything more than a scintilla of evidence is legally sufficient to 
support the findings, we conclude that the evidence is legally sufficient to 
support the jury’s award for past and future physical pain and mental anguish 
as to both Berlin and Merz. Reviewing the evidence and bearing in mind our 
standard of review for factual sufficiency, and that a court of appeals must not 
merely substitute its judgment for that of the trier of fact, we conclude that 
the evidence is also factually sufficient to support the award of damages after 
remittitur to Berlin and Merz. The jury determined that Gibbins won the fight 
but lost the purse. Gibbins’s second point is overruled.
V. Conclusion—Review of the Justices’ Cards
        Berlin 
and Merz win by a unanimous decision. The judgment of the trial court is 
affirmed.
  
  
                                                                  BOB 
MCCOY
                                                                  JUSTICE
 
 
PANEL A:   CAYCE, 
C.J.; LIVINGSTON and MCCOY, JJ.
 
DELIVERED: March 31, 2005


NOTES
1.  
Subsequently, the total awards for all elements of damages were reduced to 
$212,500 and $137,500 for Berlin and Merz, respectively, through remittitur.