**Affirmed in Part, Reversed and Remanded in Part, and Opinion Filed November 7, 2023**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-22-00779-CV**

**HUFFMAN ASSET MANAGEMENT, LLC
AND PRAIRIE CAPITAL, LLC, Appellants
V.
MAURICE COLTER AND NI-IDA COLTER, Appellees**

**On Appeal from the County Court at Law No. 2
Dallas County, Texas
Trial Court Cause No. CC-21-03561-B**

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Reichek, and Breedlove
Opinion by Justice Partida-Kipness

In this lease dispute filed by appellees Maurice Colter and Ni-Ida Colter, the trial court entered a no-answer default judgment against appellants Huffman Asset Management, LLC (HAM)[1] and Prairie Capital, LLC (Prairie Capital) and denied their motion for new trial. HAM and Prairie Capital contend the default judgment

---

[1] The Original Petition lists HAM as "Huffman Asset Management, LLC, doing business as Concrete Jungle Properties." This is consistent with the style of the case in the trial court. However, the text of the judgment references HAM as "Huffman Asset Management, LLC," and HAM's appellate counsel identifies appellants as "Huffman Asset Management, LLC and Prairie Capital, LLC." For purposes of this Opinion, we consider "Huffman Asset Management, LLC, doing business as Concrete Jungle Properties" and "Huffman Asset Management, LLC" as the same entity and refer to both as HAM.

should be vacated and a new trial ordered because the service of process on HAM and Prairie Capital through the Texas Secretary of State was ineffective and, alternatively, HAM and Prairie Capital satisfied the *Craddock* requirements for a new trial. *See Craddock v. Sunshine Bus Lines, Inc.*, 133 S.W.2d 124, 126 (Tex. 1939). We reverse the award of mental anguish damages, remand for a new trial on mental anguish damages and recalculation of additional damages under the Deceptive Trade Practices Act (DTPA), and affirm the default judgment in all other respects.

## BACKGROUND

In August 2019, the Colters leased an apartment in Denton, Texas. The lease lists Prairie Capital as the property's "Owner." The Colters allege HAM was the management company for Prairie Capital. According to the Colters, before signing the lease, a HAM representative assured them the apartment units at the complex were not prone to insect infestations, and the landlord would "routinely" address any issues "with immediate and regular steps to eliminate any issues." After moving in, however, the Colters discovered their apartment unit had "persistent and continuous roach infestation problems." The Colters contend HAM and Prairie Capital failed to resolve the insect infestation issues and, as a result, the insects "proceeded to ruin" the Colters' belongings and caused more than $2,700 in property damage.

In their August 27, 2021 Original Petition, the Colters asserted DTPA, fraud, non-disclosure, and negligence claims against HAM and Prairie Capital and asserted

additional claims against Prairie Capital for wrongful retention of their security deposit and breach of the lease. The Original Petition stated HAM and Prairie Capital could be served with citation as follows:

> HAM could be served through its registered agent for service of process, Douglas J. Huffman, at 3121 Overlook Circle, Highland Village, Texas 75077;

> Prairie Capital could be served through its registered agent for service of process, Doug Huffman, at 8214 Westchester Drive, Suite 850, Dallas, Texas 75225.

The Original Petition also stated HAM's "principal address" was at 8214 Westchester Drive, Suite 850, Dallas, Texas 75225. The Colters attempted to serve HAM, Prairie Capital, and Huffman at the Overlook Circle address, the Westchester Drive address, and the address listed in the lease, 4211 San Jacinto Street, Suite 112, Dallas, Texas 75204. Process server Robbin R. Lorenz was unable to serve HAM, Prairie Capital, or Huffman with the Original Petition at those addresses.

In separate Affidavits of Due Diligence, Lorenz described the dates, times, and locations of his unsuccessful attempts to serve HAM and Prairie Capital. He provided the following reasons why he was unable to serve HAM, Prairie Capital, and Huffman at the addresses provided:

8214 Westchester Drive, Suite 850, Dallas, TX 75225:

- o Veritex Bank, not HAM, occupies the eighth floor of 8214 Westchester Drive;

- o HAM has no office at 8214 Westchester Drive;

- o Prairie Capital has no office at 8214 Westchester Drive; and

- "[T]here is no Doug Hoffman [sic] that works here."

3121 Overlook Circle, Highland Village, TX 75077:

- Huffman no longer resides at this address; and

- The property's current owner told Lorenz he purchased the property from the Huffmans in August 2020.

4201 San Jacinto St., # 112, Dallas, TX 75204 and
4211 San Jacinto Street, Suite 112, Dallas, Texas 75204:

- The addresses are at an apartment building with secured access; and

- Lorenz was unable to access the building because it was secured.

When their efforts at service failed, the Colters amended their petition.[2] In the first amended petition, the Colters asserted they were unable to serve HAM, Prairie Capital, and Huffman despite using reasonable diligence to serve them through a process server. The Colters further asserted that, under those circumstances, the Secretary of State of the State of Texas may be served as HAM and Prairie Capital's agent for service. *See* TEX. BUS. ORGS. CODE § 5.251(1)(B) (the secretary of state is an entity's agent for service of process if "(A) the entity fails to appoint or does not maintain a registered agent in this state; or (B) the registered agent of the entity cannot with reasonable diligence be found at the registered office of the entity; . . .").

---

[2] The Colters' first amended petition contained the same factual allegations and claims as their original petition.

The Colters then served the Secretary of State as HAM and Prairie Capital's agent for service of process.

In a November 22, 2021 *Whitney* certificate[3], the Secretary of State confirmed (1) its office received the citation and first amended petition on October 25, 2021, (2) its office forwarded a copy of the citation and first amended petition by certified mail return receipt requested to HAM's "Registered Agent Douglas J Huffman" at 3121 Overlook Circle, Highland Village, TX 75077 on November 2, 2021, and (3) the process was returned to the Secretary of State on November 22, 2021, "Bearing Notation, Forward Time Expired, Return to Sender."

In a December 2, 2021 *Whitney* certificate, the Secretary of State confirmed (1) its office received the citation and first amended petition on October 25, 2021, (2) its office forwarded a copy of the citation and first amended petition by certified mail return receipt requested to Prairie Capital's "Registered Agent Doug Huffman" at 8214 Westchester Drive, Suite 850, Dallas, TX 75214 on November 2, 2021, and (3) the process was returned to the Secretary of State's office on December 1, 2021, "Bearing Notation, Return to Sender, Attempted Not Known, Unable to Forward."

---

[3] In *Whitney v. L & L Realty Corp.*, the plaintiff took a default judgment against defendants after serving them via the Secretary of State. 500 S.W.2d 94, 95 (Tex. 1973). The Texas Supreme Court held "the record before the trial court must contain a certificate from the Secretary showing that it forwarded a copy of the citation to the defendant." *U.S. Bank Nat'l Ass'n as Tr. for Residential Asset Mortg. Prods., Inc., Mortg. Asset-Backed Pass-Through Certificates Series 2005-EFC2 v. Moss*, 644 S.W.3d 130, 132 (Tex. 2022) (citing *id.* at 95–96). "Without that showing, the trial court did not have jurisdiction over the defendant." *Id.* Such a certificate is known as a *Whitney* certificate. *Id.*; *MG Int'l Menswear, Inc. v. Robert Graham Designs LLC*, No. 05-18-00517-CV, 2019 WL 642724, at *1 (Tex. App.—Dallas Feb. 15, 2019, no pet.) (mem. op.).

The Colters filed a motion for entry of default judgment on February 25, 2022 (the February 25 Motion), and a first amended motion for entry of default judgment on April 14, 2022 (the April 14 Amended Motion). The Colters filed the following evidence in support of their requests for default judgment:

- Affidavits of Maurice Colter and of Ni-Ida Colter[4];

- First Amended Affidavit[5] of their counsel, Robert H. Nunnally, Jr., with the following accompanying documents:

  - A Certificate of Fact issued by the Secretary of State on January 7, 2022, certifying that (1) HAM is an existing, domestic entity, and (2) the Secretary of State's records show Huffman as HAM's designated registered agent for service, and 3121 Overlook Circle, Highland Village, TX 75077 as HAM's designated registered office for service;

  - A Certificate of Fact issued by the Secretary of State on January 7, 2022, certifying that (1) Prairie Capital is an existing, domestic entity, and (2) the Secretary of State's records show Huffman as Prairie Capital's designated registered agent for service, and 8214 Westchester Drive, Suite 850, Dallas, TX 75214 as Prairie Capital's designated registered office for service;

  - Lorenz's affidavits of due diligence;

  - The November 22, 2021, and December 2, 2021, *Whitney* certificates;

  - Counsel's billing records; and

---

[4] The Colters filed their affidavits as standalone documents when they filed the February 25 Motion.

[5] The Colters filed Nunnally's first amended affidavit and accompanying documents as a standalone pleading when the Colters filed the April 14 Amended Motion.

o    Nunnally's August 2, 2021 demand letter sent to HAM and Prairie Capital.

The Colters also filed a first amended certificate of last-known mailing address listing the last known addresses of HAM and Prairie Capital as "4201 San Jacinto, # 112, Dallas, TX 75204." The Colters incorporated by reference their previously-filed affidavits and Nunnally's affidavit in the April 14 Amended Motion.

The trial court signed a default judgment in favor of the Colters on April 25, 2022. The default judgment awarded the Colters the following damages: (1) economic damages of $2,712 for property damage, (2) additional damages under the DTPA of $15,424, (3) damages and statutory penalties for wrongful retention of their security deposit totaling $1,000, (4) attorney's fees through the date of judgment of $4,667.24, (5) conditional post-trial and appellate attorney's fees; and (6) prejudgment interest, post judgment interest, and costs. The trial court also awarded Maurice and Ni-Ida $5,000 each for mental anguish. The trial court sent HAM and Prairie Capital a Notice of Default Judgment to 4201 San Jacinto, # 112, Dallas, TX 75204, which was the address the Colters submitted in their first amended certificates of last-known mailing address.

On May 25, 2022, HAM and Prairie Capital filed a motion to transfer venue and motion for new trial. The Colters filed a response in opposition to the post-judgment motions. The trial court held a hearing on the motion for new trial on June 22, 2022, and signed an order denying the motion for new trial on July 7, 2022. The trial court determined the motion to transfer venue was mooted by the order denying

–7–

the motion for new trial. HAM and Prairie Capital requested findings of fact and conclusions of law. The trial court declined to issue findings and conclusions. This appeal followed.

## STANDARD OF REVIEW

We review denials of motions to set aside default judgments and motions for new trial for an abuse of discretion. *E.g.*, *Dolgencorp of Tex., Inc. v. Lerma*, 288 S.W.3d 922, 926 (Tex. 2009) (per curiam); *Davis v. West*, 433 S.W.3d 101, 108 (Tex. App.—Houston [1st Dist.] 2014, pet. denied). The test for abuse of discretion is whether the trial court acted arbitrarily or without reference to guiding legal principles. *Cire v. Cummings*, 134 S.W.3d 835, 839 (Tex. 2004).

A defendant can prove its entitlement to a new trial after a no-answer default judgment in either of two ways. *MobileVision Imaging Servs., L.L.C. v. LifeCare Hosps. of N. Tex., L.P.*, 260 S.W.3d 561, 564 (Tex. App.—Dallas 2008, no pet.). The first is by showing service of process was invalid. *Id.* (citing *Fid. & Guar. Ins. Co. v. Drewery Constr. Co.*, 186 S.W.3d 571, 574 (Tex. 2006) (per curiam)). Alternatively, a default judgment should be set aside and a new trial granted when the defaulting party establishes the three *Craddock* elements: (1) the failure to appear was not intentional or the result of conscious indifference, but was the result of an accident or mistake, (2) the motion for new trial sets up a meritorious defense, and (3) granting the motion will occasion no delay or otherwise injure the plaintiff. *Id.* (citing *Craddock*, 133 S.W.2d at 126). When a defaulting party moving for new trial

meets all three elements of the *Craddock* test, a trial court abuses its discretion if it fails to grant a new trial. *Dolgencorp*, 288 S.W.3d at 926; *see also Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 86 (Tex. 1992) ("[A]n adjudication on the merits is preferred in Texas.").

## ANALYSIS

HAM and Prairie Capital bring multiple issues on appeal. In their first, second, fourth, and fifth issues they challenge the default judgment. In their third issue, they challenge the trial court's denial of their motion for new trial. In their sixth issue, they assert the underlying proceeding is subject to mandatory venue in Denton County. In their final issue, HAM and Prairie Capital ask this Court to award them appellate costs as prevailing parties.

## I.     The Default Judgment

HAM and Prairie Capital argue the default judgment should be reversed because the Colters did not strictly comply with the requirements for service of process, the default judgment references a superseded motion for default judgment, the trial court was required to hold a hearing on unliquidated damages, and the damages awarded to the Colters were not supported by sufficient evidence. We will address each in turn.

### A.     Service on the Secretary of State as HAM and Prairie Capital's agent for service of process

In their first issue, HAM and Prairie Capital argue the default judgment should be reversed because service on the Secretary of State was invalid. Both maintain

they did not receive the notice from the Secretary of State because the Colters gave the Secretary of State a "bad" address known by the Colters to be an incorrect address. Rather than giving the Secretary of State the address of HAM's registered agent (the Overlook Circle address) and Prairie Capital's registered agent (the Westchester Drive address), HAM and Prairie Capital argue the Colters should have provided the Secretary of State with the address of HAM and Prairie Capital's principal place of business, which they contend is 4211 San Jacinto Street, #112, Dallas, TX 75214 (the San Jacinto address). They argue the San Jacinto address was the only proper address for service because it is "the most recent" address for both entities on file with the Secretary of State. *See* TEX. BUS. ORGS. CODE § 5.253(b) (after service in compliance with Section 5.252, the Secretary of State shall send notice "to the most recent address of the entity on file with the secretary of state; . . ."). To make this argument, HAM and Prairie Capital rely on public information reports filed with the Secretary of State listing the San Jacinto address as the address of each entity's principal place of business. Neither the Colters nor the Secretary of State were required to discover or attempt service at the San Jacinto address.

### 1.    Designation and maintenance of registered agent and registered office

Chapter 5 of the business organizations code requires each filing entity to "designate and continuously maintain" a registered agent and a registered office in Texas. TEX. BUS. ORGS. CODE § 5.201. A party is required to serve the entity's

registered agent with process at the entity's registered office. *Id.* at §§ 5.201(b)(1), (b)(3), (c), (d); § 5.206. The Certificates of Fact provided by the Secretary of State show at the time the Colters attempted to serve Huffman, HAM, and Prairie Capital, Huffman was the designated registered agent for HAM and Prairie Capital, the Overlook Circle address was the address of HAM's designated registered office, and the Westchester Drive address was the address of Prairie Capital's designated registered office. The Colters' pleadings and the process server's affidavits establish service was attempted at the addresses Huffman, HAM, and Prairie Capital provided to the Secretary of State as their registered agent's address and registered office addresses.

### 2.    Reasonable diligence to serve entity at registered office

If the registered agent cannot with reasonable diligence be found "at the registered office," the Secretary of State is deemed an agent for service of process on the corporation. TEX. BUS. ORGS. CODE § 5.251(1)(B). "[A] diligent party may rely on the registered address a [limited liability company] has placed on file with the Secretary of State." *Autodynamics Inc. v. Vervoort*, No. 14-10-00021-CV, 2011 WL 1260077, at *6 (Tex. App.—Houston [14th Dist.] Apr. 5, 2011, no pet.) (mem. op.). Indeed "it is well-settled that a plaintiff is only required to attempt service at the address given to the [SOS], and need not make any attempt to serve the defendant elsewhere." *Dansk Express, LLC v. IPFS Corp.*, No. 01-22-00621-CV, 2023 WL 4937497, at *6–7 (Tex. App.—Houston [1st Dist.] Aug. 3, 2023, no pet.) (quoting

*Acadian Props. Austin, LLC v. KJMonte Invs., LLC*, 650 S.W.3d 98, 109 (Tex. App.—El Paso 2021, no pet.) (holding plaintiff's awareness of possible alternative location where defendant could be found was irrelevant to whether plaintiff used reasonable diligence in attempting to serve defendant at his registered address)). Further, reasonable diligence may be shown by evidence that service of process was attempted but was unsuccessful because the address of the registered office no longer belonged to the registered agent at that time. *Ingram Indus., Inc. v. U.S. Bolt Mfg., Inc.*, 121 S.W.3d 31, 34 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (reasonable diligence was shown because constable's return of service was "clear that the address on the citation was not the actual address of Ingram Industries, but that this location had been occupied by some other person or entity for the past 10 years"); *Vervoort*, 2011 WL 1260077, at *4 (reasonable diligence shown by record evidence establishing service of process attempted by failed because party no longer lived at the registered office address); *see also Catlin Specialty Ins. Co. v. Montelongo Inc.*, No. SA-12-CV-711-XR, 2012 WL 5183585, at *2 (W.D. Tex. Oct. 18, 2012) ("Because the registered address is occupied by an entirely different business, it is clear that any further service attempts at the address would be futile. Thus, the Court finds that Plaintiff has exercised reasonable diligence in attempting to find the registered agent of Montelongo Inc. and that Plaintiff's efforts have been unsuccessful.").

Here, the Colters' process server attempted to serve HAM, Prairie Capital, and Huffman at the registered office addresses on file with the Secretary of State and at the registered agent's address on file with that office. The process server's affidavits establish service of process was attempted at those addresses but failed because Huffman no longer lived at the Overlook Circle address, a bank occupied the Westchester Drive address, and neither HAM, Prairie Capital, nor Huffman maintained offices at or could be found at the Westchester Drive address. Although the Colters had no obligation to attempt service at the San Jacinto address, the record also confirms the process server tried to serve the parties at the San Jacinto address but could not access the apartment building located there. Under this record, we conclude the Colters exercised reasonable diligence to serve HAM, Prairie Capital, and Huffman. The Colters were, therefore, entitled to use substituted service on the secretary of state to serve HAM and Prairie Capital as their agent for service of process. *See* TEX. BUS. ORGS. CODE § 5.251(1)(B).

### 3. Service of process on the Secretary of State as HAM and Prairie Capital's agent for service

Service of process on the Secretary of State is accomplished by delivering duplicate copies of the process and any required fee to the Secretary of State. TEX. BUS. ORGS. CODE § 5.252. When substituted service on the Secretary of State is allowed, the secretary "is not an agent for *serving* but for *receiving* process on the defendant's behalf." *El Paisano Nw. Highway, Inc. v. Arzate*, No. 05-12-01457-CV, 2014 WL 1477701, at *2–3 (Tex. App.—Dallas Apr. 14, 2014, no pet.) (emphasis

–13–

in original) (quoting *Campus Invs., Inc. v. Cullever*, 144 S.W.3d 464, 466 (Tex. 2004); and citing *Big D Transmission & Auto Serv., Inc. v. Rollins*, No. 05–11–01019–CV, 2013 WL 3009718, at \*2 (Tex. App.—Dallas June 3, 2013, no pet.) (mem.op.)). As an agent for receiving process on an entity's behalf, the Secretary of State's receipt of the process gives the entity constructive notice of the lawsuit and constitutes proper service. *El Paisano Nw. Highway, Inc.*, 2014 WL 1477701, at \*2–3; *Amor Real Estate Inv., Inc. v. AWC, Inc.*, No. 05-15-00887-CV, 2016 WL 2753572, at \*1–2 (Tex. App.—Dallas May 10, 2016, no pet.) (mem. op.) ("As an agent for receiving process on Amor's behalf, the secretary of state's receipt of the process gave Amor constructive notice of the lawsuit; thus, Amor was properly served.").

Here, the *Whitney* certificates confirm the Secretary of State received the service of process for HAM and Prairie Capital as each entity's agent for service. As an agent for receiving process on HAM and Prairie Capital's behalf, the Secretary of State's receipt of the process gave HAM and Prairie Capital constructive notice of the lawsuit. *See El Paisano Nw. Highway, Inc.*, 2014 WL 1477701, at \*2–3. They were, therefore, properly served. *See id.*; *see also Amor Real Estate*, 2016 WL 2753572, at \*1–2.

### 4.  Process forwarded by the Secretary of State to HAM and Prairie Capital

After service on the Secretary of State, the secretary forwards the process to the corporation by certified mail, return receipt requested and "addressed to the most

recent address of the entity on file with the secretary of state." TEX. BUS. ORGS. CODE § 5.253. A certificate by the Secretary of State as to service conclusively establishes that process was served. *See El Paisano Nw. Highway*, 2014 WL 1477701, at *2–3 (citing *Campus Invs.*, 144 S.W.3d at 466 (default judgment affirmed following substituted service on secretary of state where corporation failed to update addresses for its registered agent and office and did not receive certified mail from secretary of state)). "Absent fraud or mistake, the [SOS's] certificate is conclusive evidence that the [SOS], as agent of [the defendant], received service of process for [the defendant] and forwarded the service as required by the statute." *Dansk Express, LLC*, 2023 WL 4937497, at *4 (quoting *Capitol Brick, Inc. v. Fleming Mfg. Co., Inc.*, 722 S.W.2d 399, 401 (Tex. 1986)).

The *Whitney* certificates confirm that, after receiving the service of process for HAM and Prairie Capital as each entity's agent for service, the Secretary of State forwarded the notice of process to HAM and Prairie Capital at the addresses of their registered agents and registered offices then on file with the Secretary of State. HAM and Prairie Capital, however, argue the Secretary of State should not have sent the process to the address of their registered agent or registered offices because those addresses were "bad" or "dead" addresses. They contend the language in section 5.253 requiring the Secretary of State's notice of process be "addressed to the most recent address of the entity on file with the secretary of state" means notice must be sent to the last filed address of the entity, regardless of whether that address is where

–15–

the registered agent may be served. We find this interpretation flawed and decline to apply it here.

HAM and Prairie Capital cite the predecessor statute to section 5.253 to support their interpretation of the statute. *See* TEX. BUS. CORP. ACT art. 2.11(B) (Service of Process on Corporation). Article 2.11(B) provided:

> B. Whenever a corporation shall fail to appoint or maintain a registered agent in this State, or whenever its registered agent cannot with reasonable diligence be found at the registered office, then the Secretary of State shall be an agent of such corporation upon whom any such process, notice, or demand may be served. Service on the Secretary of State of any process, notice, or demand shall be made by delivering to and leaving with him, or with the Deputy Secretary of State, or with any clerk having charge of the corporation department of his office, duplicate copies of such process, notice, or demand. ***In the event any such process, notice, or demand is served on the Secretary of State, he shall immediately cause one of the copies thereof to be forwarded by registered mail, addressed to the corporation at its registered office.*** Any service so had on the Secretary of State shall be returnable in not less than thirty (30) days.

*See* TEX. BUS. CORP. ACT, art. 2.11(B) (emphasis added). HAM and Prairie Capital argue section 5.253 removed the requirement that the Secretary of State serve an entity at its registered office with the requirement that the entity be served at "the most recent address of the entity on file with the secretary of state." We disagree.

As a preliminary matter, section 5.253 did not replace article 2.11(B). Rather, article 2.11(B) was codified into sections 5.251, 5.252, and 5.253 of the Texas Business Organizations Code. TEX. BUS. ORGS. CODE § Disp. Table 1, Editor's Notes. Those sections must, therefore, be read together when comparing article 2.11(B) and read in the context of Chapter 5 as a whole. TEX. BUS. ORGS. CODE §§

5.251, 5.252, 5.253. Under Subchapter E of Chapter 5 of the business organizations code, each filing entity is required to (1) designate and continuously maintain a registered agent and registered office for service of process, (2) provide the Secretary of State with the addresses of the registered agent and registered office, (3) file a statement of change if the entity changes its registered office, registered agent, or both, and (4) include in the statement of change any changes to the registered agent's name, the entity's registered office, or the addresses of the registered agent or registered office. *Id.* §§ 5.200–.206. Subchapter F's provisions, in turn, ensure service of process on an entity that fails to appoint a registered agent, does not maintain a registered agent, or whose registered agent cannot be found with reasonable diligence at the registered office of the entity. *See id.* §§ 5.251–.253. The purpose of both Subchapters E and F, however, is to effect service on the designated registered agent of a filing entity at the registered office of that agent and entity. *See generally id.* §§ 5.200–.257.

Under HAM and Prairie Capital's interpretation of section 5.253, the Secretary of State would be required to ignore an entity's filings concerning its registered agent and registered office in favor of information contained in a more recent filing that is unrelated to service of process and does not designate or change a registered agent, registered office, or their accompanying addresses. Such an interpretation ignores the overarching requirement that corporations maintain a registered agent and registered office for service of process and keep the addresses

of both updated with the Secretary of State. *See* TEX. BUS. ORGS. CODE §§ 5.201–.202, 5.206(a). These requirements enable "aggrieved citizens to serve the corporation with a lawsuit." *See Vervoort*, 2011 WL 1260077, at *3 (citing *Houston's Wild W., Inc. v. Salinas*, 690 S.W.2d 30, 32 (Tex. App.—Houston [14th Dist.] 1985, writ refused n.r.e.)). An entity's principal place of business is not equivalent to the entity's address for service of process. *See El Paisano Nw. Highway*, 2014 WL 1477701, at *2–3; *see also Tex. Underground Utils., Inc. v. Sw. Bell Tel. Co.*, No. 01-19-00814-CV, 2021 WL 3356847, at *4 (Tex. App.—Houston [1st Dist.] Aug. 3, 2021, pet. denied); *Catalyst Partners, Inc. v. BASF Corp.*, No. 02-10-00377-CV, 2011 WL 2306836, at *1 n.2 (Tex. App.—Fort Worth June 9, 2011, no pet.) (mem. op.). The statute provides no basis for requiring the Secretary of State to forward notice to anyone other than an entity's registered agent at entity's registered office. As such, section 5.253's reference to "the most recent address of the entity on file with the secretary of state" necessarily means the most recent address of the entity's registered agent and registered office for service of process. *See*, *e.g.*, *El Paisano Nw. Highway*, 2014 WL 1477701, at *2 (rejecting entity's argument that Secretary of State should have forwarded process to address of entity's principal place of business instead of registered agent's address).

Service of process on the Secretary of State is accomplished by delivering duplicate copies of the process and any required fee to the Secretary of State. TEX. BUS. ORGS. CODE § 5.252. After service on the Secretary of State, the secretary

forwards the process by certified mail, return-receipt requested to the corporation's registered agent at the registered office address. TEX. BUS. ORGS. CODE § 5.253; *see Amor Real Estate*, 2016 WL 2753572, at *1–2 (service conclusively established where Secretary of State forwarded section 2.252 process to entity's registered agent at the registered office address); *see also El Paisano Nw. Highway*, 2014 WL 1477701, at *2 (same); *G.F.S. Ventures, Inc. v. Harris*, 934 S.W.2d 813, 818 (Tex. App.—Houston [1st Dist.] 1996, no writ) (upholding default judgment where record demonstrated service via the Secretary of State on company's registered agent, and company failed to notify Secretary of State of registered agent's change of address). A certificate of service from the Secretary of State conclusively establishes that process was served. *Campus Invs.*, 144 S.W.3d at 466.

In this case, we conclude the *Whitney* certificates constitute conclusive proof that the Secretary of State, as agent of HAM and Prairie Capital, received service of process for HAM and Prairie Capital and forwarded the service of process as required by the statute. We overrule HAM and Prairie Capital's first issue.

## B.     Amended motion for default judgment

In their second issue, HAM and Prairie Capital argue the default judgment is invalid because it references only the Colter's "Motion for Entry of Default Judgment," which was superseded by the April 14 Amended Motion. According to HAM and Prairie Capital, the default judgment must be vacated because the trial court granted a superseded or "dead" motion. We disagree.

–19–

When the Colters filed the April 14 Amended Motion, that became the controlling motion before the trial court for ruling. *See* TEX. R. CIV. P. 65; *Retzlaff v. Tex. Dep't of Crim. Just.*, 135 S.W.3d 731, 737 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (op. on reh'g). Indeed, once a motion is amended, the prior motion becomes "a nullity." *Retzlaff*, 135 S.W.3d at 737. Accordingly, the April 14 Amended Motion was the only live motion at the time the trial court rendered default judgment in favor of the Colters.

We may presume a trial court considered all relevant motions properly before it if the order either is silent as to what the trial court considered or recites that the trial court reviewed the pleadings and evidence before it. *King v. Regions Bank*, No. 02-15-00201-CV, 2016 WL 2586663, at *2 (Tex. App.—Fort Worth May 5, 2016, no pet.) (mem. op.) (first citing *Retzlaff*, 135 S.W.3d at 737–38; and then citing *Milam v. Nat'l Ins. Crime Bureau*, 989 S.W.2d 126, 129 (Tex. App.—San Antonio 1999, no pet.)). Here, the default judgment states the trial court "considered the pleadings, evidence and filings in this matter." The live motion was filed April 14, 2022. The trial court signed and rendered the default judgment on April 25, 2022. Regardless of what pleading the trial court referred to in the default judgment, it is clear from this record the April 14 Amended Motion was the one upon which default judgment was granted. *See Retzlaff*, 135 S.W.3d at 738; *see also Reg'l Specialty Clinic, P.A. v. S.A. Randle & Assocs., P.C.*, 625 S.W.3d 895, 900, n.1 (Tex. App.—Houston [14th Dist.] 2021, no pet.) (amended hybrid motion was the live motion

–20–

granted by the trial court even though the judgment referred to the pleading as the "Motion for Summary Judgment."); *Williams v. Mutia*, No. 01-19-00340-CV, 2021 WL 3729312, at *3 (Tex. App.—Houston [1st Dist.] Aug. 24, 2021, no pet.) (proximity in time between filing second no-evidence motion for summary judgment and the trial court's ruling supports conclusion the trial court granted the second no-evidence motion despite referring to the motion in the judgment as "Defendant's Motion for Summary Judgment").

## C. Award of unliquidated damages

In their fourth issue, HAM and Prairie Capital argue the default judgment must be reversed because the trial court improperly awarded unliquidated damages to the Colters based only on affidavit testimony and without holding a hearing and receiving evidence on damages. We disagree.

A no-answer default judgment operates as an admission of the material facts alleged in the plaintiff's petition, except for unliquidated damages. *Holt Atherton Indus.*, 835 S.W.2d at 83; *Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 731 (Tex. 1984). Under rules of procedure 241 and 243, proof is required only with respect to damages which are either unliquidated or not proven by a written instrument. TEX. R. CIV. P. 241, 243.

If a claim is unliquidated or not proved by an instrument in writing, the court must hear evidence as to damages. TEX. R. CIV. P. 243. The requirement that the court "hear evidence" may be satisfied by affidavits submitted in support of a motion

–21–

for default judgment. *Chloe's Concepts, LLC v. Clear Rainbow, Inc.*, No. 05-20-00484-CV, 2021 WL 5998006, at *4 (Tex. App.—Dallas Dec. 20, 2021, no pet.) (mem. op.) (first citing *Tex. Com. Bank v. New*, 3 S.W.3d 515, 516–17 (Tex. 1999) (per curiam) (in no-answer default judgment, affidavits, as unobjected-to hearsay, constitute probative evidence and satisfy Rule 243's requirement for evidence of unliquidated damages); then citing *Ingram Indus.*, 121 S.W.3d at 36 (holding affidavit in support of motion for default judgment satisfied Rule 243's hearing requirement without need of holding evidentiary hearing); and then citing *Barganier v. Saddlebrook Apartments*, 104 S.W.3d 171, 173 (Tex. App.—Waco 2003, no pet.) (holding evidence of unliquidated damages may be supplied by affidavits filed in support of motion for default judgment).

In their pleadings, the Colters sought economic damages for loss of furniture due to the infestation, mental anguish damages, and statutory damages and penalties for bad faith retention of their security deposit. The Colters submitted affidavits and documents as evidence of their damages. The trial court did not conduct a formal in court hearing on the motion for default judgment. Instead, the trial court entered judgment after considering "the pleadings, evidence and filings in this matter." The trial court "deemed admitted" the allegations in the first amended petition and "admitted into evidence and considered the affidavits filed in support of the motion." Citing Rule 243, HAM and Prairie Capital argue the trial court was required to hold a hearing and receive evidence on damages before rendering default judgment

because the damages sought by the Colters were unliquidated. *See* TEX. R. CIV. P. 243. This is incorrect. The trial court admitted the affidavits into evidence and considered the affidavits when granting the motion for default judgment. Thus, even if the damages are unliquidated, the trial court heard evidence as to the amount of damages. *See Chloe's Concepts, LLC*, 2021 WL 5998006, at *4 (requirement a court "hear evidence" is satisfied by affidavits submitted in support of default judgment motion); *see also New*, 3 S.W.3d at 517 (approving use of affidavits to establish unliquidated damages under Rule 243). No formal hearing was required, and the damages evidence submitted with the default judgment motion, including the affidavits of the Colters and their counsel, was sufficient to support an award of damages. *Krawiec v. Holt*, No. 05-17-00307-CV, 2018 WL 2126858, at *2 (Tex. App.—Dallas May 7, 2018, no pet.) (mem. op.) ("When damages are unliquidated, the trial court must hear evidence as to damages, TEX. R. CIV. P. 243; however, such damages need not be presented with testimony. . . . Affidavits will satisfy the evidence requirement of Rule 243.") (internal citation omitted). The trial court did not err by failing to hold a separate hearing on damages. We overrule HAM and Prairie Capital's fourth issue.

### D. Sufficiency of the evidence to support mental anguish damages.

In their fifth issue, HAM and Prairie Capital argue the award of mental anguish damages should be vacated because the Colters presented "[n]o competent

evidence of mental anguish." We agree the Colters' evidence was legally insufficient to support the judgment's award of mental anguish damages.

The legal and factual sufficiency of the evidence to support an award of unliquidated damages may be challenged on appeal from a no-answer default judgment. *Argyle Mech., Inc. v. Unigus Steel, Inc.*, 156 S.W.3d 685, 687 (Tex. App.—Dallas 2005, no pet.). Where a specific attack is made upon the sufficiency of the evidence to support the trial court's determination of damages in a default judgment, the appellate court must review the evidence produced. *Dawson v. Briggs*, 107 S.W.3d 739, 751 (Tex. App.—Fort Worth 2003, no pet.).

HAM and Prairie Capital challenge the legal sufficiency of the evidence to support the award of mental anguish damages. We will sustain a legal sufficiency or "no evidence" challenge if the record shows one of the following: (1) a complete absence of a vital fact; (2) rules of law or evidence bar the court from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005). We consider the evidence in the light most favorable to the judgment and indulge every reasonable inference that supports it. *See id.* at 821–22.

"The process of awarding damages for amorphous, discretionary injuries such as pain and suffering, physical impairment, and mental anguish is inherently difficult because the alleged injury is a subjective, unliquidated, nonpecuniary loss." *Cate v.*

*Posey*, No. 05-17-01216-CV, 2018 WL 6322170, at *4 (Tex. App.—Dallas Dec. 4, 2018, no pet.) (mem. op.) (citing *Ten Hagen Excavating, Inc. v. Castro-Lopez*, 503 S.W.3d 463, 486 (Tex. App.—Dallas 2016, pet. denied)). The presence or absence of pain, either physical or mental, is an inherently subjective question because the process is not readily susceptible to objective analysis. *Dawson*, 107 S.W.3d at 751. Accordingly, the trier of fact is given discretion when determining such damages. *Sw. Tex. Coors, Inc. v. Morales*, 948 S.W.2d 948, 951–52 (Tex. App.—San Antonio 1997, no writ). However, an award for mental anguish damages must be supported either by direct evidence of the nature, duration, and severity of the plaintiff's mental anguish, thereby establishing a substantial interruption in the plaintiff's daily routine, or by circumstantial evidence of a high degree of mental pain and distress that is greater than mere worry, anxiety, vexation, embarrassment, or anger. *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995). In addition to evidence of the existence of compensable mental anguish, there must also be some evidence to justify the amount awarded. *Saenz v. Fid. & Guar. Ins.*, 925 S.W.2d 607, 614 (Tex. 1996).

Here, the Colters rely on their affidavit testimony to support the award of mental anguish damages. Maurice and Ni-Ida's affidavits each include one paragraph explaining the mental anguish they suffered because of the cockroach infestation and the landlord's failure to remedy the infestation. Maurice stated:

I have been caused mental anguish as a result of the wrongs by the Defendants as described in this affidavit. Our family's possessions have been ruined due to the insects that the landlord failed to address. Living among insects who ruined our belongings had been a deeply upsetting event for me and my family. We had to endure this because the landlord did not tell us the truth about the unit and did not remedy the issue despite written requests.

Similarly, Ni-Ida stated:

My husband and I each experienced mental anguish as a result of having to live among insects which the landlord could not remedy. The insects ruined our belongings. They reduced the value of our apartment to us. We each experienced severe anguish as a result of having to live among insects in this matter. We request an award of $ 5,000 each for our mental anguish.

While those statements provide some evidence of the Colters' belief they suffered mental anguish, the testimony does not show the nature, duration, and severity of the mental anguish, a substantial interruption in the Colters' daily routine, or a high degree of mental pain and distress that is greater than mere worry, anxiety, vexation, embarrassment, or anger. The affidavits also include no evidence to justify the amount awarded. We, therefore, conclude the Colters' affidavit testimony was legally insufficient to support the award of mental anguish damages and sustain HAM and Prairie Capital's fifth issue in part by reversing the mental anguish damages awarded to the Colters.

We do not, however, render a take nothing judgment against the Colters as to the mental anguish damages. "[W]hen an appellate court sustains a no evidence point after an uncontested hearing on unliquidated damages following a no-answer default judgment, the appropriate disposition is a remand for a new trial on the issue of

unliquidated damages." *Holt Atherton Indus.*, 835 S.W.2d at 86; *Armstrong v. Benavides*, 180 S.W.3d 359, 364 (Tex. App.—Dallas 2005, no pet.) (explaining that, although appellate courts generally reverse and render when sustaining a legal sufficiency challenge, "an exception is made in cases involving default judgments because the facts have not been fully developed"). When, as in this case, an appellate court reverses some but not all the categories of damages awarded by the trial court in a no-answer default judgment, remand is necessary only as to the categories of damages for which the evidence presented was insufficient. *Cate*, 2018 WL 6322170, at *4 (finding evidence insufficient to support amount of past and future medical expenses awarded and remanding for new trial solely on those damages); *Dawson*, 107 S.W.3d at 755 (applying *Holt Atherton Industries* and remanding for new trial on only those damage issues for which the court concluded were supported by insufficient evidence). Here, remand is necessary for a new trial on mental anguish damages because the evidence of those damages presented below was insufficient to support the award.

We must also remand for a recalculation of additional damages awarded under the DTPA because the trial court's calculation of additional damages was based in part on its award of mental anguish damages. *See* TEX. BUS. & COM. CODE § 17.50(b)(1) (permitting award of additional damages up to three times the amount of actual damages, including mental anguish damages); *see also Houston Livestock Show & Rodeo, Inc. v. Hamrick*, 125 S.W.3d 555, 584 (Tex. App.—Austin 2003, no

pet.) (DTPA additional damages included award for past mental anguish); *In re Columbia Med. Ctr. of Las Colinas*, 306 S.W.3d 246, 248 (Tex. 2010) (orig. proceeding) ("[D]amages awards that are statutorily capped are required to be recalculated when the actual damages against which they are measured are reduced on appeal."). Accordingly, we reverse and remand for a new trial on the issue of mental anguish damages and a recalculation of additional damages under the DTPA. *See Cate*, 2018 WL 6322170, at *4; *see also Dawson*, 107 S.W.3d at 755.

## II. Denial of Motion for New Trial

HAM and Prairie Capital also challenge the trial court's denial of their motion for new trial. They contend the trial court abused its discretion because they satisfied the *Craddock* elements. *See Craddock*, 133 S.W.2d at 126. Under *Craddock*, a new trial is warranted when (1) the failure to appear was not intentional or the result of conscious indifference, but was the result of an accident or mistake, (2) the motion for new trial sets up a meritorious defense, and (3) granting the motion will occasion no delay or otherwise injure the plaintiff. *B. Gregg Price, P.C. v. Series 1 - Virage Master LP*, 661 S.W.3d 419, 424 (Tex. 2023) (citing *Craddock*, 133 S.W.2d at 126). The Colters maintain the trial court properly denied the motion for new trial because HAM and Prairie Capital failed to satisfy all three *Craddock* elements. We agree with the Colters.

HAM and Prairie Capital provided no evidence showing their failure to answer was not intentional or the result of conscious indifference but was due to a

mistake or accident. Rather, in the trial court and in this Court they argue only that they failed to answer because the Colters had the Secretary of State serve them at a "bogus" address. HAM and Prairie Capital, thus, rely solely on their incorrect argument that the Colters should have served them with process at the address of their principal office.[6] As we concluded above, however, neither the Colters nor the Secretary of State was under the obligation to attempt service on HAM and Prairie Capital at the address of their principal offices. On the contrary, once the Secretary of State received the process, HAM and Prairie Capital had constructive notice of the lawsuit and were properly served. *See El Paisano Nw. Highway, Inc.*, 2014 WL 1477701, at *2–3; *see also Amor Real Estate Inv.*, 2016 WL 2753572, at *1–2. Moreover, the Secretary of State properly attempted service on HAM and Prairie Capital at the addresses of their registered offices and registered agents, which were on file with the Secretary of State.

The Texas Business Corporation Act requires that all corporations shall "designate and continuously maintain" a registered office and a registered agent. TEX. BUS. ORGS. CODE § 5.201. A corporation "may change its registered office, its registered agent, or both by filing a statement of the change. . . ." *Id.* § 5.202. These provisions impose an affirmative duty on the corporation to ensure the Secretary of State has current and accurate information on the whereabouts of the corporation's

---

[6] HAM and Prairie Capital assert the address of their respective principal offices is 4201 San Jacinto, #112, Dallas, TX 75204.

registered office and the identity of its registered agent. *Tex. Underground Utils.*, 2021 WL 3356847, at *4; *Catalyst Partners, Inc.*, 2011 WL 2306836, at *1 n.2 (explaining, although defendant complained plaintiff asked Secretary of State to serve defendant at address of defendant's registered agent when plaintiff knew registered agent's address "was not good," defendant had "statutory duty to update its address for its registered agent").

In their motion for new trial, HAM and Prairie Capital failed to articulate any excuse for failing to timely inform the Secretary of State of a change of address for its registered office for service. Indeed, they do not even argue any such change occurred. We reject HAM and Prairie Capital's argument that they were not served and were denied due process of law. The Colters complied with the method of service authorized by statute. HAM and Prairie Capital were the victims of their own negligence in not notifying the Secretary of State of any change to their registered agent or registered office. *See, e.g., Glob. Services Inc. v. G & W Leasing Co.*, No. 01-94-01234-CV, 1996 WL 608904, at *7 (Tex. App.—Houston [1st Dist.] Oct. 24, 1996, writ denied) (mem. op.) ("Global was the victim of its own negligence in not notifying the Secretary of State of any change to its registered agent or registered office.").

Under this record, we conclude the Colters established as a matter of law that HAM and Prairie Capital's own negligence in not complying with the duties imposed upon them by statute prevented them from responding to the lawsuit. *See*

–30–

*Tankard-Smith, Inc. Gen. Contractors v. Thursby*, 663 S.W.2d 473, 476 (Tex. App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.) ("the failure of the method of service was the result of the corporation's own failure to comply with the statutory requirements which are designed to assure it of notice of pending suits."). As such, they did not meet the first *Craddock* factor. The trial court did not abuse its discretion by denying the motion for new trial. We overrule HAM and Prairie Capital's third issue.

## III. Remaining issues

In their final issues, HAM and Prairie Capital assert the underlying proceeding is subject to mandatory venue in Denton County, and they should be awarded costs. The trial court did not consider the merits of HAM and Prairie Capital's motion to transfer venue. Rather, the court denied the motion as moot when it denied the motion for new trial. The merits of the venue motion are, therefore, not before us on appeal. We overrule the sixth issue.

As for the award of appellate costs, HAM and Prairie Capital ask this Court to award them appellate costs. We generally award appellate costs to the prevailing party. TEX. R. APP. P. 43.4. Here, we have affirmed the default judgment as to liability and most of the damages awarded. The Colters have, therefore, prevailed and will be awarded their appellate costs. We overrule HAM and Prairie Capital's seventh issue.

# CONCLUSION

Under this record, we conclude HAM and Prairie Capital were properly served and, as a result, the default judgment was proper. We also conclude HAM and Prairie Capital are not entitled to a new trial as to liability, the $2,712 award of economic damages, the $1,000 award of statutory damages, their liability for additional damages under section 17.50 of the DTPA, or the awards of attorney's fees, costs, and interest. However, the Colters' evidence of mental anguish damages was insufficient to support the amounts awarded in the judgment. We, therefore, reverse the award of mental anguish damages, reverse the calculation of additional damages under the DTPA, remand for a new trial on mental anguish damages and to recalculate additional damages, and affirm the default judgment in all other respects.

/Robbie Partida-Kipness/
ROBBIE PARTIDA-KIPNESS
JUSTICE

220779F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

HUFFMAN ASSET
MANAGEMENT, LLC AND
PRAIRIE CAPITAL, LLC,
Appellants

No. 05-22-00779-CV     V.

MAURICE COLTER AND NI-IDA
COLTER, Appellees

On Appeal from the County Court at
Law No. 2, Dallas County, Texas
Trial Court Cause No. CC-21-03561-
B.
Opinion delivered by Justice Partida-
Kipness. Justices Reichek and
Breedlove participating.

In accordance with this Court's opinion of this date, the judgment of the trial
court is **AFFIRMED** in part and **REVERSED** in part. We **REVERSE** that portion
of the trial court's judgment awarding appellees mental anguish damages,
**REVERSE** the calculation of additional damages under the DTPA, and
**REMAND** this cause to the trial court for a new trial on mental anguish damages
and to recalculate additional damages. In all other respects, the trial court's
judgment is **AFFIRMED**.

It is **ORDERED** that appellees MAURICE COLTER AND NI-IDA
COLTER recover their costs of this appeal from appellants HUFFMAN ASSET
MANAGEMENT, LLC AND PRAIRIE CAPITAL, LLC.

Judgment entered this 7th day of November 2023.